**Richard L. BUFORD, et al., Plaintiffs,**

**v.**

**J. Mac HOLLADAY, et al., Defendants.**

**Civ. A. No. J89–0233(B).**

United States District Court,
S.D. Mississippi,
Jackson Division.

Dec. 18, 1990.

---

**4.** Neither the court nor the parties found any case where the court imposed prejudgment interest under 15 U.S.C. § 15(a).

Whitman B. Johnson III, Michael F. Myers, Jackson, Miss., for plaintiffs.

R. Lloyd Arnold, Richard D. Mitchell, Jackson, Miss., for defendants.

## MEMORANDUM OPINION
## AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court, pursuant to Rule 72 of the Federal Rules of Civil Procedure, on Plaintiffs' Application for Review of the Magistrate's Order entered July 12, 1990, granting Plaintiffs a limited right to depose attorneys Jim Kelly, Richard Mitchell, and Robert Gibbs regarding certain issues raised in this case. Kelly, Mitchell, and Gibbs, together with Mike Moore in his official capacity as Mississippi Attorney General, have filed a Cross–Application for Review of that same order. The Court, having considered the Application for Review, the Cross–Application for Review, and the attachments and memoranda of authorities thereto, is of the opinion the Order of the Magistrate should be modified as follows.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case stems from the alleged termination of a Mississippi Department of Economic Development ("DED") employee that occurred during the legislatively mandated reorganization of that department in 1988. During the course of that reorganization, legal advice was sought by DED from the Mississippi Attorney General's Office on different occasions, and several official opinions of the Attorney General were rendered. In an opinion dated July 12, 1988, and prepared by Jim Kelly of the Mississippi Attorney General's Office, DED was advised that employees who had previously attained the status of permanent state service employees could not be terminated unless the department complied with Mississippi State Personnel Board procedures. Thereafter, in an October 25, 1988, opinion authored by Richard Mitchell of the Attorney General's Office, that office reversed its prior position, and DED was advised that all personnel decisions of the department, including the decision to terminate a permanent state service employee, were exempted from Mississippi Personnel Board procedures for a period of one year following the effective date of the reorganization

enabling statute. Therefore, the Executive Director of DED was authorized to make any and all personnel decisions, including the decision to terminate a permanent state service employee, without affording such employees certain due process protections.

Several of the permanent state service employees allegedly terminated during the reorganization of DED have filed lawsuits that are currently pending in the United States District Court for the Southern District of Mississippi. These suits are generally predicated upon a deprivation of a property right in continued employment without due process of law and are brought pursuant to 42 U.S.C. § 1983. The Defendants in those suits have raised good faith immunity as well as good faith reliance on the second Attorney General's Opinion as defenses to liability. All of these suits have been consolidated for purposes of discovery only.

In the course of conducting discovery in the consolidated actions, Plaintiffs noticed the depositions of Kelly and Mitchell, the attorneys in the Mississippi Attorney General's Office who had prepared the two Attorney General Opinions in question, and the deposition of Gibbs, an attorney in the Mississippi Attorney General's Office who was allegedly responsible for assigning the second opinion to Mitchell. Kelly, Mitchell, Gibbs, and Moore ("attorney-deponents") filed an Objection to Discovery and Motion to Quash Subpoena and for Protective Order, seeking to prevent the taking of the depositions. By Order dated July 12, 1990, the Magistrate denied in part and granted in part the Motion of the attorney-deponents. The Magistrate ruled that Plaintiffs had a right to depose the attorneys in question. However, the scope of those examinations was restricted to questions concerning the underlying facts leading to the opinions issued by the Attorney General's Office, as well as facts regarding why those opinions were changed. The Magistrate further ordered that the depositions be stayed, pending the resolution of an Application for Review by this Court.

Thereafter, Plaintiffs filed an Application for Review of the Magistrate's Order and

requested that the Court allow the attorney-deponents to be fully deposed by Plaintiffs. The attorney-deponents filed a Cross–Application for Review of the Magistrate's Order and requested this Court to vacate the Order, to quash the subpoenas issued to them, and to issue a protective order barring Plaintiffs from taking the depositions of the attorney-deponents.

## II. ANALYSIS

■ The Federal Rules of Civil Procedure do not specifically prohibit taking the deposition of counsel. *See* Fed.R.Civ.P. 30(a) ("any party may take the testimony of any person"). However, it is a practice that has long been discouraged as disruptive of the adversarial system and one which lowers the standards of the profession. *See Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986). While it does not conclude today that counsel is absolutely immune from being deposed, the Court is persuaded that such discovery should not be allowed except in the most unusual of circumstances.

Turning to the case at hand, the parties have adopted "all or nothing" positions as to the scope of questioning that should be allowed in the depositions at issue. Plaintiffs ask for complete discovery from the attorneys. Specifically, Plaintiffs assert that they are entitled to examine the proposed deponents regarding all the facts and circumstances surrounding DED's dissatisfaction with the first opinion given by the Attorney General's Office and the Attorney General's change of position in the second opinion. *Plaintiffs' Brief in Support of Application for Review* at 3. In support of the position that no discovery should be had from the attorneys in question, the attorney-deponents assert that the Order issued by the Magistrate fails to afford the protections to which they are entitled under the attorney-client privilege, the work product privilege, and the deliberative process privilege for governmental bodies.

### a. The Attorney Client Privilege

■ It is a long established rule that an attorney is not permitted and cannot be compelled to testify as to certain communications made to him by his client unless the client consents. Where the communications are of a confidential nature, are made between a client and his attorney, and are made for the purpose of seeking or giving legal advice, such communications are absolutely protected from disclosure by the attorney-client privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 389–95, 101 S.Ct. 677, 682–85, 66 L.Ed.2d 584 (1981). The privilege protects only against the disclosure of the communications themselves and does not protect against the disclosure of underlying facts by the client. *Upjohn*, 449 U.S. at 395, 101 S.Ct. at 685. Conversely, to the extent that the attorney has obtained information from non-client third parties, the attorney-client privilege does not apply, and information which an attorney secures from a third party while acting on behalf of his client is not shielded from disclosure by the privilege. *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947).

Plaintiffs assert that the attorney-client privilege is not applicable to the facts of this case since the communications between the DED and the Attorney General's Office occurred in the course of a consultation that was statutorily authorized. Therefore, Plaintiffs maintain, no attorney-client relationship existed between DED and the Attorney General's Office. Miss.Code Ann. § 7–5–25 (1972) requires the Mississippi Attorney General's Office to give written legal opinions to any state officer, agency, or department upon request on any question of law relating to the duties of such public bodies or officers. The Court does not find, however, that the mere existence of such a statute precludes the applicability of an attorney-client privilege in this situation. Rather, the actual nature of the services performed must be examined in order to determine the relationship of the parties. *See Thill Securities Corp. v. New York Stock Exchange*, 57 F.R.D. 133, 138–39 (E.D.Wis.1972) (noting that, where communications are confidential and related to obtaining legal advice, attorney-client relationship may exist between two governmental agencies).

The Attorney General is the "chief legal officer and advisor for the State." Miss.Code Ann. § 7–5–1 (1972). Where an attorney is consulted for the purpose of obtaining advice on legal questions or matters, that activity gives rise to an attorney-client relationship. *In re LTV Securities Litigation*, 89 F.R.D. 595, 602 (N.D.Tex.1981). This Court finds such activity between DED and the Attorney General's Office to exist here. Consequently, an attorney-client relationship does exist under the facts of this case.

Plaintiffs next assert that, even if such an attorney-client relationship does exist under the facts of this case, the privilege that attaches to that relationship was waived by the official publication of the two Mississippi Attorney General's Opinions in issue. Since DED knew that its request for advice from the Attorney General's Office would culminate in a public document, Plaintiffs contend that DED's conduct constitutes an implied waiver of the attorney-client privilege as to all communications that were a necessary part of creating that public document.

The Court does not find Plaintiffs' reasoning on this matter persuasive. The mere fact that the end product of an attorney-client relationship is a document that becomes part of the public record does not per se waive the privilege as to all communications that occurred prior to the publication of that document. If the Court were to accept Plaintiffs' reasoning on this point, the ultimate conclusion would be that the mere filing of a complaint or an answer abrogates the privilege as to all communications between an attorney and his client which occurred prior to the filing of such a document. The result of such a standard would be the near total destruction of the attorney-client privilege.

The Court therefore concludes that the attorney-client privilege prohibits disclosure by the attorney-deponents of any confidential communications that occurred between the Attorney General's Office and DED personnel regarding the legal advice sought and given in the matters at issue in this case.

### b. The Work Product Privilege

The Court also concludes that much of the information protected by the attorney-client privilege falls within the strictures of the work product privilege as well. Rule 26(b)(3) of the Federal Rules of Civil Procedure provides,

> [A] party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation ... only upon a showing that the party seeking discovery has a substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney.

By its express terms, Rule 26(b)(3) applies only to discovery of "documents and tangible things." However, the majority of courts that have considered the issue have recognized that certain types of information are protected by the work product doctrine regardless of the particular form in which that information is sought. In *Shelton v. American Motors Corp., supra,* the court held that the work product doctrine barred the taking of an attorney's deposition where the testimony sought would have reflected the mental impressions and opinions of the attorney. *Shelton,* 805 F.2d at 1328.

The Court is persuaded by the logic of *Shelton* that the work product doctrine should be available to protect the mental reflections, opinions, conclusions, and legal theories of an attorney regardless of the particular form in which discl sure of such information is sought. *See, e.g., Yoffe v. Keller Industries, Inc.,* 580 F.2d 126, 131 n. 12 (5th Cir.1978), *cert. denied* 440 U.S. 915, 99 S.Ct. 1231, 59 L.Ed.2d 464 (1979). On this basis, the Court finds that much of the information

sought by Plaintiffs in the instant matter is protected by the work product doctrine. Plaintiffs seek to depose the attorneys in question with the hope that those examinations will reveal the attorneys' recollections of conversations and statements regarding the Attorney General Opinions issued in connection with the reorganization of DED. The work product doctrine clearly prohibits the compelled release of such information since an attorney's recollection of particular conversations will necessarily be permeated with the attorney's own mental reflections, opinions, conclusions, and legal theories regarding those discussions.

 Plaintiffs maintain that the work product doctrine is not applicable to the facts of this case since the communications in question did not occur in anticipation of litigation. However, this requirement of the doctrine does not attach significance to the fact that a communication occurred before or after litigation was actually commenced, since prudent parties anticipate litigation and often begin preparation prior to the time suit is filed. *See Fireman's Fund Insurance Co. v. McAlpine*, 120 R.I. 744, 391 A.2d 84, 89–90 (1978). Rather, the determinative factor is whether, in light of the circumstances that existed at the time of the communication, it could be said that the communication occurred because of the prospect of litigation. *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir.1982), *cert. denied* 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984).

 While no specific legal claims had been made against DED at the time that the conversations in question occurred, the Court is satisfied that DED was concerned about the legal ramifications of the department's reorganization and realized, as would any business involved in a substantial layoff of employees, that litigation was a reasonable possibility. Accordingly, the discussions in question can fairly be said to have occurred in anticipation of litigation. This conclusion is supported by the fact that the first lawsuit to arise from the termination of DED employees was filed less that one month after the second Attorney General's Opinion was rendered on October 25, 1988.

 The Court therefore finds that, to the extent that Plaintiffs seek to discover the attorney-deponent's recollections of conversations that occurred in the process of preparing the Attorney General opinions in question, such information is protected from disclosure by the work product doctrine.[1]

### c. The Deliberative Process Privilege

 The attorney-deponents have asserted the deliberative process privilege for governmental bodies as an additional grounds for denying discovery in this matter. This Court initially notes that, as in all federal court cases, the discovery process and the privileges that may be asserted during the course of discovery are governed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence. *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y.1988); *American Civil Liberties Union v. Finch*, 638 F.2d 1336, 1342–43 (5th Cir. 1981). This does not mean, however, that state privilege rules should be ignored. "[A] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where they can be accomplished at no substantial

---

1. Plaintiffs maintain that, even if the Court determines that the work product doctrine does apply to the facts of this case, they have established the degree of undue hardship and substantial need required by Rule 26(b)(3) to compel the Court to order disclosure of the information at issue. The Court notes that, unlike ordinary "fact" work product, work product that is tainted with the mental processes of an attorney is subject to a near absolute restriction on production that has rarely been breached. *See Upjohn*, 449 U.S. at 399–402, 101 S.Ct. at 687–689; *Hickman*, 329 U.S. at 512–14, 67 S.Ct. at 394–95.

The Court also notes that because the work product doctrine is "redundant" in this case and merely safeguards information that also falls within the protection of the attorney-client privilege, a finding that the requisite degree of need had been established under the work product privilege would not result in the automatic disclosure of the information. Therefore, the Court declines to consider the narrower issue of whether Plaintiffs have met their burden of necessity under Rule 26(b)(3) and, instead, prefers to address the issue as a more comprehensive one of waiver of privileges.

**494**

cost to federal substantive and procedural policy." *Lora v. Board of Education,* 74 F.R.D. 565, 576 (E.D.N.Y.1977) (citing *United States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y.1976)). The Court therefore concludes that a deliberative process privilege for state agencies may be found under the facts of this case if such a privilege exists under either state or federal law.

▇ The Court will first consider any state laws that could serve as a basis for a deliberative process privilege. A search of Mississippi case law and statutory provisions reveals that the only informational privileges afforded to governmental agencies is that embodied in the Mississippi Public Records Act, which provides:

> [A]ll public records are hereby declared to be public property, and any person shall have the right to inspect, copy, or mechanically reproduce or obtain a reproduction of any public record of a public body.

Miss.Code Ann. § 25–61–5 (Supp.1990). Miss.Code Ann. § 25–61–11 (Supp.1990) provides that the Act is not to be construed so as to abrogate any constitutional or statutory privilege which might otherwise apply under the circumstances of a case. In addition, other exceptions from the general provisions of the Act are provided by specific statutory enactments that preserve the confidentiality of certain types of information. *See, e.g.* Miss.Code Ann. § 25–1–102 (attorney work product); Miss. Code Ann. § 9–1–38 (judicial records).

Upon examination of the privileges provided for under Mississippi law, this Court can find no evidence of a privilege for the deliberative processes of a state governmental agency. Indeed, this Court is persuaded that the particularity with which statutory privileges have been provided for certain types of governmental information militates against the finding of a broad, generalized privilege for all governmental deliberation. Accordingly, the Court concludes that no deliberative process privilege can be applied to this case based on state laws of privilege.

▇ Federal common law has long recognized a deliberative process privilege that protects certain types of intragovernmental communication from public disclosure. The application of the privilege is founded on the belief that there are certain governmental processes related to legal and policy decisions which cannot be carried out effectively if they must be carried out under the public eye. "There is a public policy involved in this claim of privilege[,] ... the policy of open, frank discussion between subordinate and chief concerning administrative action." *Kaiser Aluminum & Chemical Corp. v. United States,* 157 F.Supp. 939, 946 (Ct.Cl.1958).

This Court notes that a majority of cases that have considered the notion of a "deliberative process" privilege have spoken of that privilege as an evidentiary extension of the "executive" privilege afforded to the federal executive branch of government. *See Zenith Radio Corp. v. United States,* 764 F.2d 1577, 1580 (Fed.Cir.1985); *Branch v. Phillips Petroleum Co.,* 638 F.2d 873, 881 (5th Cir.1981); *McClelland v. Andrus,* 606 F.2d 1278, 1288 (D.C.Cir.1979). This Court has been unable to discover any court opinion wherein this privilege of the federal executive branch of government has been extended to provide a privilege for state governmental agencies. Rather, the deliberative process privilege has traditionally been applied only to communications relating to policy formulations at the highest levels of the federal executive branch. Therefore, this Court concludes that the deliberative process privilege should not be extended to include state governmental agencies and therefore does not stand as a bar to the discovery sought here from attorney-deponents.

*d. The Waiver of Privileges Through the Assertion of Affirmative Defenses*

▇ Plaintiffs assert that Defendants have waived all privileges regarding any communications between DED and the Attorney General's Office by raising the advice of counsel as a defense in these actions. Reliance on the advise of counsel defense results in a waiver of the attorney client and work product privileges only where it can be said that the defendant has

voluntarily injected that issue into the case. *Ward v. Succession of Freeman*, 854 F.2d 780, 788 (5th Cir.1988). Defendants argue that the advice of counsel was put into issue in this lawsuit by Plaintiffs when they asked for awards of punitive damages. Therefore, Defendants insist, there can be no waiver of privileges since they did not voluntarily inject the issue into the lawsuit.

This Court must determine whether the issue of DED's reliance on the advice of the Attorney General's Office was raised by the allegations of the complaint, in which case there would be no waiver, or whether it was placed in contention by the defenses raised in the answer, in which case the privileges would be waived. In making this determination, the Court considers four factors: (1) the theory of the lawsuit; (2) the nature of the defenses raised as a bar to liability; (3) the specific nature of the information in question; and (4) the relevance of that information to the various causes of action and defenses asserted in the case.

The basic thrust of the lawsuits filed by Plaintiffs in these consolidated actions is that the Defendants in question either acted unconstitutionally or condoned unconstitutional conduct on the part of others in terminating Plaintiffs' employment with DED. Such activity, it is alleged, constituted a deprivation of procedural and substantive due process as well as an impermissible taking of property without just compensation, all in violation of Plaintiffs' fifth and fourteenth amendment rights as guaranteed by the United States Constitution. Plaintiffs have brought the alleged constitutional violations before this Court pursuant to 42 U.S.C. § 1983. In these section 1983 actions, Plaintiffs have sued some of the Defendants in their capacities as both state officials and as individuals.

In response to Plaintiffs' allegations, Defendants assert that no deprivation of a constitutional or federally secured right has occurred. The Defendants named in their individual capacities also assert that they are immune from personal liability pursuant to the doctrine of qualified "good faith" immunity that exists for public officials in section 1983 actions. In addition to the assertion of qualified immunity, Defendants' answer contains the following statement:

> The defendants would state that at all times relevant to the Complaint filed herein, they acted and relied upon, in good faith, a written Attorney General's Opinion issued pursuant to Miss.Code Ann. § 7–5–25 (Supp.1988). Consequently, *the named defendants are absolutely immune from any liability, personal or otherwise,* in this cause of action.

*Defendants' Answer and Defenses to Plaintiff's Complaint* at 2–3 (emphasis added). Defendants insist that the advice of counsel was raised only as a response to the punitive damages claim asserted by the Plaintiffs. Because of the manner in which the advice of counsel was pleaded, however, the Court concludes that this matter was raised in response to both the section 1983 and the punitive damages claims.

■■■ Qualified "good faith" immunity is available in section 1983 actions to protect public officials from incurring personal liability where the public official has carried out discretionary, as opposed to ministerial, governmental functions with a good faith regard for the constitutional rights of others. In determining whether public officials have carried out their duties in good faith so that qualified immunity exists, the United States Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), held that the legal standard to be applied to the conduct of public officials is an objective one. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Thus, the *Harlow* standard rejects a subjective inquiry into the motives or intentions that government officials may have had while undertaking the actions that are in dispute. *Id.* at 815–16, 102 S.Ct. at 2736–37.

■ One potentially relevant circumstance in determining if the official's conduct was objectively reasonable is whether the official relied on the advice of counsel. *See England v. Hendricks*, 880 F.2d 281, 284 (10th Cir.1989). Thus, it is clear that advice of counsel, even where pleaded as a separate defense, does not constitute a true and complete defense to a section 1983 claim, but rather is merely one of several factual circumstances that may be considered under the objective "good faith" standard for determining whether qualified immunity exists. Since advice of counsel does not constitute a true defense in section 1983 actions, the pleading of an advice of counsel defense cannot result in a waiver of any privileges. The Court does find, however, that because the advice of counsel is one factual circumstance that may be considered in determining whether qualified "good faith" immunity for public officials exists, the pleading of qualified immunity and the advice of counsel as an element thereof can result in a waiver of privileges to the extent that the privileged information is relevant to the "objective reasonableness" standard established in *Harlow.*

■ Having determined that the pleading of qualified "good faith" immunity may result in the waiver of privileges to the extent that such privileged information may be relevant to the *Harlow* standard, the Court must now determine whether the privileged information requested by Plaintiffs in this matter is subject to disclosure because of Defendants' assertions of qualified immunity and the advice of counsel as an element thereof. The Court initially notes that the information sought by Plaintiffs can be grouped into two classes. One category of discovery requested by Plaintiffs concerns the knowledge of applicable law that DED personnel had at the time of the employment terminations. *Brief in Support of Application for Review* at 7, 9. The Court concludes that this category of information is directly relevant to the inquiry posed under the *Harlow* standard. Once a section 1983 plaintiff establishes that the law defining the allegedly violated right was clearly established at the time of the alleged violation, the qualified immunity defense will ordinarily fail, "since a reasonably competent public official should know the law governing his conduct." *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39. However, even where the law was clearly established, the public official may be able to prove that "extraordinary circumstances" existed so that he "neither knew nor should have known of the relevant legal standard." *Id.* at 819, 102 S.Ct. at 2739. This Court concludes that DED's knowledge of applicable law at the time that the terminations occurred is directly relevant to the issue of whether "extraordinary circumstances" may exist in this case sufficient to sustain a finding of qualified immunity if the right allegedly violated in this matter was clearly established at the time that the violation occurred. Accordingly, the Court finds that both the attorney-client and work product privileges have been waived as to this category of information and that discovery from the attorney-deponents should be allowed concerning the knowledge of applicable law that DED personnel had at the time that the terminations in question occurred.

■ The second category of requested discovery involves the motivations of DED personnel in terminating Plaintiffs' employment. *Brief in Support of Application for Review* at 3, 7. This Court has previously noted, however, that the *Harlow* standard expressly rejects a subjective evaluation of a party's motivations and intentions in determining the qualified immunity issue. The Court therefore concludes that the pleading of qualified immunity, even where the defendant has raised the advice of counsel as an element thereof, does not waive any privileges as to this category of information, since this type of evidence is simply not relevant to the issues raised by the qualified immunity defense.

■ The Court now considers the extent of any waiver that might have occurred as a result of Defendants' response to Plaintiffs' claims for punitive damages. Plaintiffs' claims for punitive damages may

be sustained only upon a showing that Defendants' conduct was motivated by "evil motive or intent, or ... reckless or callous disregard" for Plaintiffs' federally protected rights. *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). Since Plaintiffs were the initial parties to plead the punitive damages issue, this Court concludes that Plaintiffs were the parties who interjected the issue of Defendants' motivations or state of mind into this controversy. Consequently, the Court finds that no waiver of privileges occurred when Defendants responded to Plaintiffs' allegations by pleading good faith immunity, including advice of counsel, to rebut the Plaintiffs' claims of evil motive or intent or reckless disregard for the protected rights of others.

Accordingly, the Court, having considered the causes of action and defenses asserted in this matter, the specific nature of the discovery requested, and the manner in which that information became relevant to the issues in this case, concludes that Defendants' partially waived the attorney-client and work product privileges by virtue of their response to Plaintiffs' section 1983 claims and that discovery should be had from the attorney-deponents concerning DED's knowledge of applicable law at the time that the employment terminations at issue occurred.

The Court notes, however, that the only issue of waiver of privileges presently before it concerns that waiver of privileges through the assertion of defenses in the pleadings. The Court does not consider at this time any waiver of privileges that may result during trial from a defendant's disclosure of privileged information while attempting to offer evidence as to certain defenses on which that party bears the burden of proof.

Finally, this Court notes that difficult issues such as the ones presented by the discovery motions presently under consideration could largely be avoided if litigants took heed of *Harlow*'s admonition to resolve the immunity issue before any discovery was allowed in a section 1983 case. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Since the existence of good faith immunity is generally a pure question of law and since the resolution of that issue may be determinative of the case, litigants would be well advised to place this issue before the Court prior to extensive discovery in section 1983 cases. This practice would clearly result in a more judicious use of the Court's time, as well as the time of governmental agencies and officials who must defend a substantial number of these cases while continuing to carry out their public duties.

IT IS THEREFORE ORDERED that the Order of the Magistrate is modified and that Plaintiffs be allowed to depose the attorney-deponents solely on the issue of DED's knowledge of, applicable law at the time that the employment terminations in question occurred.

SO ORDERED.