**Coach Charles E. Gray FOLSE**

v.

**DELGADO COMMUNITY COLLEGE, et al.**

**Civ. A. No. 90–4936.**

United States District Court, E.D. Louisiana.

Oct. 29, 1991.

---

Robert K. Guillory, Robert K. Guillory & Associates, Lafayette, for plaintiffs.

Winston Gerard DeCuir, Winston G. De-Cuir & Associates, William Joseph Guste, Jr., Atty. Gen., Baton Rouge, for defendants.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on motion of defendants, Delgado Community College ("Delgado"), the Board of Trustees for State Colleges and Universities (the "Board"), Dr. James Callier, Tommy Smith, and Dr. C.B. Ellis,[1] for summary judgment pursuant to F.R.C.P. Rule 56 seeking dismissal of plaintiff's claims against them. The several basis of the defendants' Motion for Summary Judgment are as follows:

(1) that Delgado Community College, as a matter of state law, lacks procedural capacity to sue or be sued and, even if properly made a party, is immune from suit by virtue of the Eleventh Amendment;

(2) that the Board of Trustees for State Colleges and Universities is immune from suit by virtue of the Eleventh Amendment;

(3) that Dr. James Callier, Tommy Smith, and Dr. C.B. Ellis are immune from suit in their official capacity by virtue of the Eleventh Amendment;

(4) that aforesaid individual defendants acted in good faith and are also immune from suit in their individual capacities; and

1. The individual defendants have been sued in both their official capacity and as individuals.

(5) that plaintiff failed to state a factual basis of any deprivation of a constitutional right under the United States Constitution or a violation of any other state or federal law.

The plaintiff, Coach Folse, has formally opposed said motion. This matter was set for oral hearing on October 23, 1991, but was submitted on the briefs of the parties.

## I. FACTUAL BACKGROUND

The thrust of plaintiff's complaint against the aforementioned defendants is that while employed as head basketball coach and teacher at Delgado Community College and towards the end of his tenure of 9 years, he became "the target of a concerted effort by administrative personnel (the individual defendants) to undermine his effectiveness as coach and subject him to false accusations of misconduct and irresponsibility."[2] Coach Folse further alleges that at no time was he given the opportunity to be heard and present evidence to rebut the charges leveled against him on December 29, 1989.[3] Finally, as a result and intimidated by the use of news media against him, Coach Folse alleges that he was given no choice but to tender his resignation. Coach Folse further comments that: "Today, Tommy Smith is serving as head basketball coach at Delgado. Defendants have achieved their purpose."[4]

Plaintiff has plead with particularity, *inter alia*, the following facts:

Plaintiff (a white) was educated and has served as a basketball coach for the past 29 years, was employed to serve as head basketball coach at Delgado in 1980, and served continuously in that position until December 29, 1989, at which time he was demoted and effectively discharged from his position as head coach, without proper hearing or due process, because of his race.

\*     \*     \*     \*     \*     \*

Since Callier's appointment there has been an unmerited and disproportionate increase in the promotion of blacks to higher positions on the faculty and staff at the college. Callier and other conspiring with him, acting under color of state law, have implemented a policy of discrimination against whites and in favor of blacks, discharging whites from positions of employment and elevating blacks in employment, on the basis of race, thereby denying whites their rights to due process and equal rights.

This racial discrimination against whites was supported and encouraged by the formation of a 'black caucus' made up of black faculty and staff at the college; and members of this black caucus received promotions from Callier and are now holding positions formerly occupies by whites.

\*     \*     \*     \*     \*     \*

In May of 1989, plaintiff was approached by his assistant coach, defendant Tommy Smith, and advised that Callier had ordered that plaintiff was to be 'evaluated' with regard to his coaching position. Smith also advised plaintiff that he would no longer be serving as his plaintiff's assistant. In 29 years of

---

**2.** Plaintiff's Opposition Memorandum, p. 2.

**3.** Plaintiff brought suit to redress deprivation of his rights by defendants pursuant to "the Constitution of the United States and by Acts of Congress providing for the equal rights of citizens; and to recover damages and other equitable relief under the Acts of Congress providing for the protection of Civil Rights—suit being brought under 42 U.S.C. Sections 1981, 1983, 1985—with original jurisdiction being given to the United States District Court under 28 U.S.C. Sections 1343(a)(3) & (4)." Plaintiff's Complaint, para. 7. *See also,* Deposition of Coach Folse, at pp. 14, 21, 25, 27–28 (Plaintiff's Exh. "B") [wherein plaintiff made statements under oath to the effect that he never was afforded a

hearing prior to the actions allegedly taken against him by the defendants]; and Defendants' Statement of Undisputed Facts, at No. 6 (stating that plaintiff did not receive a hearing).

**4.** *Id.* at para. 13. By way of explanation, plaintiff states that in April of 1988, the administration of Delgado changed, and Dr. James Callier was appointed interim president. He further explains he and others noticed a marked shift in administrative policy and "a brooding atmosphere of pro-black and anti-white sentiment. The administration especially wanted 'black role models.'" Plaintiff's Opposition Memorandum, at p.2. See also, Deposition of Coach Folse, pp. 35–44, 49 and 52 (Plaintiff's Exh. "B").

coaching, plaintiff had never been formally advised that he was to be 'evaluated.'

\* \* \* \* \* \*

The defendants gave information to the press. Callier announced that Tommy Smith would be serving as 'co-coach' while he (Callier) continued his 'evaluation' of plaintiff. Callier would not speculate on how long the evaluation process might take but during the interim he would hold Smith responsible for the operation of the basketball program. The defendants told the press that plaintiff had been 'demoted' and Smith 'named head coach.'[5]

## II. THE LAW

### A. *Sovereign Immunity pursuant to the Eleventh Amendment.*[6]

Movers herein assert that Delgado, the Board, and the individual defendants in their official capacity are immune from suit pursuant to the Eleventh Amendment.[7] " 'The Eleventh Amendment of the Constitution of the United States bars suits in federal court by citizens of a state against their own state or a state agency or department.' "[8] Although Coach Folse complaint

does not name the State of Louisiana, "suit is nevertheless barred if the state is the real party in interest."[9]

■ The following factors must be examined to determine whether an entity is an arm of the state: "(1) whether the state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its name; (6) whether the entity has the right to hold and use property."[10]

■ In the instant case, state law created Delgado Community College.[11] This fact alone is not conclusive.[12] Additionally, state law characterizes Delgado as an entity within the State Colleges and University system under the supervision and management of the Board of Trustees for the State Colleges and Universities (the Board).[13] Delgado acts only under the direction of the Board, a constitutionally created agency within the Department of Education and therefore a part of the executive branch of state government.[14]

> *See also, Tillman v. CSX Transp., Inc.*, 929 F.2d 1023, 1025 n. 1 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 176, 116 L.Ed.2d 139 (1991).

---

5. Plaintiff's Complaint, paras. 11, 14–17, 24.

6. The Eleventh Amendment of the U.S. Constitution states that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

7. In *In re Allied–Signal, Inc.*, 919 F.2d 277, 280 n. 4 (5th Cir.1990), the court explained that: Basic Eleventh Amendment immunity, of course, arises under federal law and provides immunity from suit in federal court to states and certain political subdivisions that qualify as 'arms of the state.' However, it is important to note that a state can create a limited waiver of this immunity by consenting to be sued in its own state courts without waiving its Eleventh Amendment immunity under federal law. These two concepts of immunity should not be confused. Each ultimately rests upon separate, albeit related footing— common law sovereign immunity is determined by state law and Eleventh Amendment immunity is determined under federal standards. (citations omitted).

8. *See, Delahoussaye v. City of New Iberia,* 937 F.2d 144, 146 (5th Cir.1991); *Frazier v. King,* 873 F.2d 820, 827 (5th Cir.), *reh'g denied en banc,* 878 F.2d 1435 (5th Cir.1989).

9. *Delahoussaye,* 937 F.2d at 146 (*citing, Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974)).

10. *Id.* at 147 (*citing, Minton v. St. Bernard Parish School Bd.,* 803 F.2d 129, 131 (5th Cir.1986)).

11. L.S.A.–R.S. 17:3217(1).

12. *Delahoussaye,* 937 F.2d at 147.

13. L.S.A.–R.S. §§ 17:3351, 17:3217.

14. L.S.A.–R.S. §§ 17:651, 36:651(D)(1); La. Const. art. 8, § 6. See also, *Delahoussaye,* 937 F.2d at 147 (finding that state law characterizes the University of Southwestern Louisiana as an arm of the state).

■ Plaintiff points out in opposition memorandum, that defendants fail to address the other factors determinative of the issue of whether they are entitled to sovereign immunity—that is, their source of funds, the degree of autonomy the entity enjoys, whether they are concerned with local or statewide problems, and whether they have the right to hold and use property. In *Muhammed v. Board of Supervisors of Southern University*, 715 F.Supp. 732, 734 (M.D.La.1989), the court states that the source of the agency's funds is an extremely important characteristic to be examined in the aforementioned analysis.[15] While this prong of the analysis remains wholly unaddressed in defendants' motion, this matter is the subject of well-settled law, to wit:

> [T]he Board ... receives funding from the State of Louisiana as an agency with the executive branch. Although the Board may seek additional sources of funding, state law requires that 'the board employ the proceeds of all donations ... to a university, or any school, [or] college ... so as to effectuate the purposes and in accord with the terms and conditions of such donations, grants, subscriptions and bequests.' La.Rev. Stat.Ann. § 17:3351(B)(2)(d). In addition, all monies borrowed, notes, bonds or certificates issued by the Board must be in accordance with law and with the approval of the State Bond Commission, La. Rev.Stat.Ann. § 17:3351(A)(4). Finally, the La. Const. art. 12, § 10(C) requires that any judgment against the state or one of its agencies be paid from state funds. *Delahoussaye*, 937 F.2d at 148.

Based on the foregoing, which is a matter of state law, the Fifth Circuit in *Delahous-*

*saye*, supra, affirmed the district court, and held that it correctly concluded that a judgment against the University would be paid from the state treasury. *Id.*

As to the degree of autonomy the entity enjoys, the Governor of Louisiana appoints, and the state Senate approves, the members of the Board of Trustees for State Colleges and Universities, the body with authority to supervise and manage Delgado.[16]

Balancing the factors set forth above, this Court concludes that the state of Louisiana is the real party in interest in plaintiff's suit against the defendant Board of Trustees for State Colleges and Universities, which has procedural capacity to sue and be sued on behalf of defendant Delgado.

■ As to the claims against the individual defendants, Callier, Smith and Ellis, they were made the subject of suit both in their official and individual capacities. Suits against individuals in their official capacity " 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' "[17] Because plaintiff in the case at bar sued the defendants in their individual and official capacities for violations of his constitutional rights, his claim falls within *Ex Parte Young*[18], and therefore he can maintain an action against the defendants in their individual capacities under 42 U.S.C. § 1983.[19] Under *Ex Parte Young*, supra, the court may only retain jurisdiction over official capacity claims for injunctive relief, and *not* official capacity claims for damages. Accordingly plaintiff's suit against the individual defendants in the instant case, are not barred either in their official capacity or their individual capacity, since

---

**15.** The Board in the instant case obtains its funding from the legislature. As a state agency, any judgment rendered against the Board must be paid from the funds appropriated by the Legislature. La. Const. art. 12, § 10.

**16.** *Id.* (citing, L.S.A.–R.S. §§ 17:3218, 17:1831).

**17.** *Muhammed v. Board of Supervisors of Southern University*, 715 F.Supp. 732, 734 (M.D.La. 1989) (citations omitted).

**18.** 209 U.S. 123, 159, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1909).

**19.** *Cf., Frazier v. King*, 873 F.2d 820, 827 (5th Cir.1989).

the plaintiff seeks prospective relief, including the issuance of an injunction against defendants, that is in addition to money damages, to prohibit further racial discrimination against whites at Delgado.[20]

### B. Qualified Immunity.

■ The individual defendants herein argue that they are protected by qualified immunity. An official is protected by qualified immunity if his actions were reasonable under the law. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In other words, an official is protected by qualified immunity unless he violates a person's right where "the contours of the right [are] sufficiently clear that a reasonable official would not understand that what he is doing violates that right." *Id.*

■ The test for qualified immunity is one of "objective legal reasonableness."[21] *Id.* at 639, 107 S.Ct. at 3038. An official's conduct is not judged on the basis of the subjective beliefs of the official regarding his actions, but rather, on the basis of what a reasonable official would have believed in the same situation. *Id.* at 641, 107 S.Ct. at 3039–40. In other words, that the individual subjectively believed that his actions were proper is irrelevant. His actions must appear reasonable when measured against settled precedent at the time they were taken.

■ The Court finds that plaintiff has adequately plead that the individual defendants violated his constitutionally guaranteed rights. The Fourteenth Amendment prevents states from depriving individuals "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

■ Plaintiff's complaint essentially states that he was summarily demoted from his position as head coach over extra-

neous matters that never should have involved him. He further claims that he was deprived of his *de facto* property interest in his job, without the guarantees of procedural due process under the Fourteenth Amendment, procedural due process to which he was entitled. Moreover, he claims that he was stripped not only of his property right, but also subjected to scandalizing stigmata that hindered his attempts to secure other, similar employment, all without the fundamental guarantees of procedural due process. In fact, he alleges with particularity that he was never afforded any hearing whatsoever, and never "formally" informed of his demotion. Rather, he was informed by his assistant, that is "through the grapevine," of the concerted actions of the individual defendants which adversely impacted his livelihood and his ability to perform his work, to which he dedicated himself for 29 years.[22] The totality of the circumstances plead with particularity demonstrably constitute violations of constitutional magnitude by the individuals named defendant in these proceedings. Said allegations further obviate the defense of good-faith immunity that the individual defendants seek to invoke.

Though plaintiff admits that he finally tendered his resignation, the situation allegedly foisted upon him gave him no choice but to so resign. There is no question but that plaintiff's allegations and deposition testimony are to the effect he was summarily demoted by the individual defendants acting in concert because he was "white", and without affording him a hearing or formal notification thereof. Plaintiff's further allegations and testimony regarding the false accusations of unseemly conduct, heralded through the news media and threatened to be transmitted to official documents, stand in stark contrast to defendant's allegations that plaintiff's tender of resignation constitutes "compromise."[23] Defendants have attempted to characterize

---

**20.** *See,* Plaintiff's Complaint, para. 27.

**21.** *See also, Buford v. Holladay,* 133 F.R.D. 487, 495 (S.D.Miss.1990) stating:
> Once a section 1983 plaintiff establishes that the law defining the allegedly violated right was clearly established at the time of the alleged violation, the qualified immunity de-

fense will ordinarily fail, 'since a reasonably competent public official should know the law governing his conduct.'
> *Id.* at 496 (*quoting, Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982)).

**22.** *See, supra* note 5 and accompanying text.

plaintiff's alleged forced resignation, or perhaps more artfully stated "constructive discharge" as a compromise agreement under Louisiana law.[24]

The plaintiff in this § 1983 action has clearly "shoulder[ed] the burden of pleading a *prima facie* case, including the obligation of alleging 'detailed facts supporting the contention that the plea of immunity cannot be sustained.' "[25]

■ The law is unmistakable that some form of hearing is required *before* an individual is finally deprived of his property interest. *Mathews v. Eldridge*, 424 U.S. 319, 332–333, 96 S.Ct. 893, 902–903, 47 L.Ed.2d 18, 32–34 (1976). As early as 1976, it was long past the point of debate that a person may not be deprived of his property or liberty by a state or its officials without the fundamentals of procedural due process, to wit: (1) a hearing; (2) before an impartial decision-maker; (3) after notice of charges; and (4) with an opportunity to present one's own case.[26] Defendants motion to dismiss/summary judgment admits that a hearing was not intended nor is one forthcoming, inasmuch as the position taken is that plaintiff's termination/resignation was the result of a "compromise agreement."

■ In the present case and in light of the submissions of the parties, it cannot be summarily said that the actions allegedly taken the individual defendants herein were taken in "objective" good faith. The alleged violations of law in this action include but are not limited to racial discrimination (i.e., against whites) and violation of the Fourteenth Amendment. The defendants do not contend that the law concerning either racial discrimination in employment or the Fourteenth Amendment was unclear at the pertinent time, or that extraordinary circumstances existed. Accordingly, defendants' Motion to Dismiss on the issue of "qualified good faith immunity" is without merit.

■ Coach Folse has also alleged sufficient facts suggesting the existence of a Section 1985 conspiracy (i.e., the triad consisting of Callier, Smith and Ellis). Section 1985 allows for the recovery of damages against groups of individuals who

> conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws; or of equal privileges and immunities under the laws....

The U.S. Supreme Court has construed this statute to require the pleading and proof of "some racial, or perhaps otherwise class-based, invidiously discriminating animus behind the conspirators' action."[27] In oth-

---

**23.** Plaintiff's position is that he had no choice under the circumstances, but to tender his resignation.

**24.** In *Brown v. Texas A & M University*, 804 F.2d 327 (5th Cir.1986), the court considered the issue of whether a public employee's resignation under duress serves to bar suit for violation of his civil rights. The *Brown* court typifies the uncomfortable situation characterized by the modern cliche, "caught between a rock and a hard place," in more poetic verse, to wit:

> In order to establish a cognizable claim of constructive discharge, a plaintiff must allege particular facts showing either that the employer found [him]self 'between the Scylla of voluntary resignation and the Charybdis of forced termination,' or that 'the employment conduct ... [was] motivated by a desire to avoid subjecting its actions to the scrutiny of a termination-related hearing.'

*Id.* at 333 (*quoting, Fowler v. Carrollton Public Library*, 799 F.2d 976, 981 (5th Cir.), *reh'g denied en banc*, 803 F.2d 717 (5th Cir.1986)). That is the situation Coach Folse in the instant case allegedly found himself in—that is, "a head coach without a job; a head coach relegated to "co-coaching" under the supervision of [his former assistant] peremptorily appointed to rule over him." *See*, Opposition Memorandum on Behalf of Plaintiff, at p. 12; and Plaintiff's Complaint, paras. 11–26.

**25.** *Lynch v. Cannatella*, 810 F.2d 1363, 1376 (5th Cir.1987) (*quoting, Morrison v. City of Baton Rouge*, 761 F.2d 242, 245 (5th Cir.1985)). *See also, Neito v. San Perlita Independent School District*, 894 F.2d 174, 178 (5th Cir.1990).

**26.** *Boehning v. Indiana Employees Association*, 423 U.S. 6, 7, 96 S.Ct. 168, 169, 46 L.Ed.2d 148, 150 (1975); *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 606, 95 S.Ct. 719, 722, 42 L.Ed.2d 751, 756 (1975); *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

**27.** *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). *See also, Henzel v. Gerstein*, 608 F.2d 654 (5th Cir. 1979).

er words, while section 1983 prohibits the deprivation of civil rights, section 1985 prohibits conspiracy motivated by a discriminatory intent to deprive someone of civil rights.

As a general rule, motions to dismiss pursuant to F.R.C.P. Rule 12 are denied where the plaintiff's allegations, if true would entitle him to relief.[28] Here, with two exceptions—(1) Coach Folse's federal causes of action for damages and injunctive relief against Delgado and the Board and (2) his federal causes of action against Callier, Smith and Ellis in their official capacities for damages—all of the counts which address plaintiff's complaint under federal law make claims for which relief can be granted.

As to the defendants' motion for summary judgment, the record does not support their contention, that as a matter of law, Coach Folse's due process and discrimination claims lack merit. There is competent evidence to the effect that there was no hearing whatsoever, that Coach Folse was never "formally" notified of the charges against him, that he was in fact "demoted" summarily, that the news media was given information with regard to the actions taken by the administration of Delgado—that is, actions taken against plaintiff without giving him notice or the opportunity to be heard, and that he had no choice in the face of such allegedly outrageous conduct, but to resign. Viewing the evidence in the light most favorable to the non-moving party, it appears that the plaintiff was "ambushed" and effectively "railroaded" out of his position by certain members of the administration and staff of

Delgado. Further, there is no indication in the record that Coach Folse's demotion was of such urgency that adequate notice and hearing could not be provided. The record rather reflects plaintiff's stellar performance in his position as head coach during his tenure at Delgado and any action taken could have awaited that "due process" to which Coach Folse was unquestionably entitled to under the Fourteenth Amendment.

The case law in this circuit cautions against the use of the summary judgment device in cases such as this involving employment discrimination, where nebulous questions of motive and intent are often at issue. *See, e.g., Thornbrough v. Columbus and Greenville Railroad Company,* 760 F.2d 633, 640–41 (5th Cir.1985); *Clark v. Tarrant County,* 798 F.2d 736, 746 (5th Cir.), *reh'g denied en banc,* 802 F.2d 455 (5th Cir.1986); *Jones v. Western Geophysical Company of America,* 669 F.2d 280, 283 (5th Cir.1982); *Hayden v. First National Bank of Mount Pleasant,* 595 F.2d 994, 997 (5th Cir.1979). It simply cannot be said after a review of the evidence in a light most favorable to Coach Folse, that he could not prevail under any discernable circumstances.[29] Genuine issues of material fact appear of record respecting the federal causes of action against the individual defendants.[30]

### C. State Law Claims.

As to plaintiff's pendent state law claims, the foregoing more than adequately addresses, why under the *disputed* facts, defendants are not entitled to summary judgment dismissing plaintiff's claim for breach of contract. As to plaintiff's action

---

**28.** *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

**29.** On motion for summary judgment, "the moving party [must] establish the right to judgment with such clarity that the non-moving party cannot recover ... under any discernible circumstances." *Everhart v. Drake Management, Inc.,* 627 F.2d 686, 690 (5th Cir.1980).

**30.** Plaintiff asserts no effort was made by defendants to comply with contractual provisions or the Fourteenth Amendment both of which guarantee due process. Instead, without a hearing,

he was placed on probation, suspended from his position as head coach and demoted to co-coach. Dr. Callier, individual defendant herein, supports rather than controverts plaintiff's allegations and attestations. In answers to Plaintiff's Interrogatory No. 3 (Plaintiff's Exh. "E") Dr. Callier states: "My decision was based on a conversation with Dr. Ellis and the Athletic Director, Tommy Smith. No one else was involved." In other words, plaintiff was deprived of any hearing prior to actions instituted against him, and as a result of a *tete a tete* between Callier, Smith and Ellis.

for defamation, the record on this motion for summary judgment reflects contrary to movers' argument that Dr. Callier, and his alleged cohorts, were in direct communication with the *Times–Picayune* in New Orleans, Louisiana.[31]

■ Plaintiff has satisfied his burden and come forward with evidence in addition to his own testimony, that defendants "manufactured" the charges levied against him, and communicated those charges to the news media. Plaintiff has set forth evidence to the effect that the individual defendants went beyond the mere investigation an employee suspected of wrongdoing.

■ Not to belittle Delgado (i.e., a small, community junior college in the city of New Orleans with largely local student body), but the defendants' suggestion that even the title "head" coach bestowed on an employee of such an institution could imbue a person with the miasma "public figure" status borders on specious. Moreover, in opposition memorandum, the plaintiff makes it perfectly clear that he is not asserting that the news media went beyond the limits of "fair comment," but rather, that the individual defendants (i.e., his employer and superiors at a public institution) "conspired to circulate and publish scurrilous, false charges against him to force him out of his job." [32]

Accordingly, for all of the foregoing reasons, and considering the briefs and the submissions of the parties,

IT IS ORDERED that defendants' Motion to Dismiss and for Summary Judgment shall be DENIED, except as otherwise set forth herein below.

IT IS FURTHER ORDERED that defendants' Motion to Dismiss the plaintiff Coach CHARLES E. GRAY FOLSE's federal and state law claims *for money damages* against defendants, Delgado Community College, the Board of Trustees for State Colleges and Universities, and the individual defendants, Dr. James Callier, Tommy Smith, and Dr. C.B. Ellis, in their official capacities is GRANTED.[33]

IT IS FURTHER ORDERED that defendants' Motion to Dismiss the plaintiff's federal claims for money damages against the individual defendants, Dr. James Callier, Tommy Smith, and Dr. C.B. Ellis, in their individual capacities, is DENIED.

IT IS FURTHER ORDERED that defendants' Motion for Summary Judgment dismissing plaintiff's claims under Louisiana law against the individual defendants, Dr. Callier, Tommy Smith and Dr. C.B. Ellis, in their individual capacities, for defamation and breach of contract is DENIED.

---

**31.** *See, Times–Picayune* article dated January 5, 1990 (Plaintiff's Exh. "G") probative of the fact that the individual defendants communicated to the news media that Coach Folse was the subject of an investigation for misconduct, "which could culminate in Folse's dismissal." *Id.*

**32.** Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss/Summary Judgment, at p. 21.

**33.** Lest there be any mistake, it is here reiterated that plaintiff's claim for injunctive relief pursuant to section 1983 against the individual defendants in their official capacity remains the subject of these proceedings.