**David DELAHOUSSAYE,**
**Plaintiff–Appellant,**

v.

**CITY OF NEW IBERIA, et al.,**
**Defendants–Appellees.**

No. 90–4336.

United States Court of Appeals,
Fifth Circuit.

July 22, 1991.

R. James Kellogg, New Orleans, La., for plaintiff-appellant.

Susan Stafford, David G. Sanders, Asst. Attys. Gen., William J. Guste, Jr., Atty. Gen., La. Dept. of Justice, Div. of Risk Litigation, Baton Rouge, La., for Slu & Davis.

Laura K. Austin, Andrew H. Meyers, Preis & Kraft, Lafayette, La., for City of New Iberia, Daigre & Davis.

Before WISDOM, KING, and BARKSDALE, Circuit Judges.

KING, Circuit Judge:

The City of New Iberia, Louisiana (the City) removed the plaintiff-appellant David Delahoussaye (Delahoussaye) from its civil service re-employment list as a result of information indicating that Delahoussaye may have engaged in homosexual activities in the University of Southwestern Louisi- ana's (the University's) restrooms several years before Delahoussaye began his em- ployment with the City as a police officer. Delahoussaye sued the City and the Uni- versity, alleging that the City's decision not to rehire him violated, *inter alia*, his rights to procedural due process, substantive due process, and equal protection guaranteed by the Fourteenth Amendment to the Unit- ed States Constitution, and that the Univer- sity violated these same rights by revealing information concerning these incidents to the City. The district court granted sum- mary judgment in favor of the University because it found that the University is an arm of the state and therefore is immune from suit under the Eleventh Amendment. The district court granted summary judg- ment in favor of the City because it con- cluded that the City's action in removing Delahoussaye from its re-employment list was rationally related to a legitimate gov- ernmental purpose. We affirm.

## I. BACKGROUND

Prior to Delahoussaye's employment as a police officer by the City of New Iberia in late November, 1985, he had been detained twice by the University of Southwestern Louisiana's campus police with regard to alleged homosexual activity in the Universi- ty's public restrooms. On each occasion, the University placed a record of Delahous- saye's detention in its "banned" box but released Delahoussaye without bringing charges.[1] After about a year of employ- ment as a police officer, the City laid off Delahoussaye for economic reasons. Shortly before Delahoussaye was to have been re-employed, a campus police officer informed the New Iberia Police Depart- ment (the Department) about Delahous- saye's earlier detentions by the campus police. After a pre-disciplinary hearing,

---

1. The University states in its Memorandum in Support of Motion for Summary Judgment:

    Following each detention, Delahoussaye was banned from the [the University] campus and his picture and investigative information was entered into the "banned box" maintained by the campus police. The "banned box" was instituted to enable campus police to become familiar with individuals banned from the campus because of criminal activity or al- leged criminal activity.

    Delahoussaye does not dispute that the Universi- ty placed investigative materials concerning his detentions in the "banned box," but he denies that the University denied him access to the campus.

the City removed Delahoussaye's name from its civil service re-employment list because the City concluded that Delahoussaye's actions in connection with the detentions were prejudicial to the Department and contrary to the public interest.

Delahoussaye sued the City of New Iberia and the University, alleging, *inter alia,* that the University violated his rights to due process and equal protection by revealing information concerning the detentions to the Department, and that the City violated these same rights by removing his name from its re-employment list.[2] The City and the University filed separate motions for summary judgment, and the district court granted both motions in separate rulings.

The district court reasoned that the University was an arm of the state of Louisiana and entitled to immunity from damages under the Eleventh Amendment. Because Delahoussaye sued the campus police officer only in his official capacity, the district court concluded that Delahoussaye's action against the officer also must fail.[3] Finally, the district court rejected Delahoussaye's claims against the City because the City's action in removing Delahoussaye from its re-employment list was rationally related to the legitimate governmental purpose of protecting the Department from acts prejudicial to the Department and the public interest. The district court signed one judgment incorporating both rulings,

and Delahoussaye filed a timely notice of appeal.

## II. ANALYSIS

On review of a grant of summary judgment, we apply the same substantive standard as the district court. Our task is to determine whether a genuine issue exists concerning any material fact, and if not, whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *City of Madison, Miss. v. Bear Creek Water Ass'n, Inc.,* 816 F.2d 1057, 1059 (5th Cir.1987). The parties do not dispute the essential facts in this case, and the only question before this court is whether the University and the City were entitled to judgment as a matter of law.

### A. *Eleventh Amendment*

#### 1. Suit against the state

■ "The Eleventh Amendment to the United States Constitution bars suits in federal court by citizens of a state against their own state or a state agency or department."[4] *Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 185–86 (5th Cir. 1986). Although Delahoussaye's amended complaint did not name the state as a party, suit nevertheless may be barred if the state is the real party in interest. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct.

---

**2.** Delahoussaye also named as defendants the state of Louisiana, the Mayor of the City of New Iberia, the Chief of Police of the City of New Iberia, and Albert Davis, the campus police officer who had informed the Department of Delahoussaye's detentions. Delahoussaye also alleged violation of his right to privacy, his First Amendment rights, and employment discrimination under 42 U.S.C. § 2000e. In his amended complaint, Delahoussaye dropped the state of Louisiana as a defendant as well as his actions under the First Amendment and 42 U.S.C. § 2000e. The district court did not address Delahoussaye's right to privacy claim because Delahoussaye directed this claim against the University, and the district court found all of Delahoussaye's claims against the University barred by the Eleventh Amendment.

**3.** The district court also reasoned that the suit against Albert Davis in his *individual* capacity should be dismissed on the basis of qualified immunity. Because Delahoussaye sued officer

Davis only in his official capacity, however, the district court's discussion of this issue was unnecessary. *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (a state employee sued in his official capacity is not a suit against the individual but a suit against the official's office).

**4.** The Eleventh Amendment states:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Although the amendment does not explicitly bar suits against a state by its own citizens, the Supreme Court consistently has "held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974).

1347, 1355, 39 L.Ed.2d 662 (1974) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.) (quoting *Ford Motor Co. v. Department of Treasury of State of Louisiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)).

Delahoussaye seeks actual and compensatory damages for lost wages and other employment benefits, costs, and attorney's fees. The University argues that any damages awarded to Delahoussaye would be paid from public funds. Such an award is prohibited by the Eleventh Amendment, the University reasons, unless the state through the University's Board of Supervisors waived its Eleventh Amendment immunity. The state has not given an express waiver of its immunity from suit under the Eleventh Amendment. La.Rev. Stat.Ann. § 13:5106. Delahoussaye, however, argues that the University is independent of the state and contends that the district court had no evidence before it that an award against the University would be paid from the state treasury.

The University asserts that the state is the real party in interest because the University is an arm of the state. We have stated that "[a] federal court must examine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state itself." *Laje v. R.E. Thomason General Hospital,* 665 F.2d 724, 727 (5th Cir.1982) (citations omitted). The following factors must be examined to determine whether an entity is an arm of the state:

(1) whether the state statutes and case law characterize the agency as an arm of the state;

(2) the source of funds for the entity;

(3) the degree of local autonomy the entity enjoys;

(4) whether the entity is concerned primarily with local, as opposed to statewide, problems;

(5) whether the entity has authority to sue and be sued in its own name;

(6) whether the entity has the right to hold and use property.

*Minton v. St. Bernard Parish School Bd.,* 803 F.2d 129, 131 (5th Cir.1986) (footnote omitted) (quoting *Clark v. Tarrant County,* 798 F.2d 736, 744 (5th Cir.1986)). We agree with the district court's conclusion that these factors establish that the University of Southwestern Louisiana is an arm of the state.

### (1) Whether state law characterizes the agency as an arm of the state

State law created the University of Southwestern Louisiana, *see* La.Rev.Stat. Ann. § 17:3217, although that fact alone is not conclusive.[5] In addition, state law characterizes the University as an entity within the State Colleges and University system under the supervision and management of the Board of Trustees for State Colleges and Universities (the Board). La. Rev.Stat.Ann. §§ 17:3351, 17:3217. The University only acts under the direction of the Board, a constitutionally created agency within the Department of Education and therefore a part of the executive branch of state government. La.Rev.Stat.Ann. §§ 17:651, 36:651(D)(1); La. Const. art. 8, § 6; *see also Darlak v. Bobear,* 814 F.2d 1055, 1059–60 (5th Cir.1987) (finding that state law characterizes the Louisiana Department of Health and Human Resources (DHHR) and the Charity Hospital in New Orleans as arms of the state because state statute created DHHR as part of the executive branch and Charity Hospital is a part of DHHR).

### (2) The source of funds for the entity

"[B]ecause an important goal of the Eleventh Amendment is the protection of state treasuries, the most significant factor

---

**5.** The Louisiana legislature in 1884, for example, created Tulane University in New Orleans—a fact specifically recognized by the La. Const. art. 8, § 14. No one would seriously contend, however, that Tulane, a private university, is immune from suit under the Eleventh Amendment.

in assessing an entity's status is whether a judgment against it will be paid with state funds." *McDonald v. Board of Miss. Levee Comm'rs*, 832 F.2d 901, 907 (5th Cir.1987). Delahoussaye observes that state law empowers the Board of Trustees for State Colleges and Universities to seek and accept donations, bequests, or other forms of financial assistance on behalf of the University from public or private persons or the federal government. La.Rev. Stat.Ann. § 17:3351(A)(2). The Board also has the authority to borrow money and issue notes, bonds and certificates of indebtedness. La.Rev.Stat.Ann. § 17:3351(A)(4).

The University points out, however, that the Board also receives funding from the State of Louisiana as an agency within the executive branch. Although the Board may seek additional sources of funding, state law requires that "the board employ the proceeds of all donations, grants, subscriptions and bequests to a university, or to any school, [or] college ... so as to effectuate the purposes and in accord with the terms and conditions of such donations, grants, subscriptions and bequests." La. Rev.Stat.Ann. § 17:3351(B)(2)(d). In addition, all monies borrowed, notes, bonds or certificates issued by the Board must be in accordance with law and with the approval of the State Bond Commission, La.Rev. Stat.Ann. § 17:3351(A)(4). Finally, the La. Const. art. 12, § 10(C) requires that any judgment against the state or one of its agencies be paid from state funds. Thus the district court correctly concluded that a judgment against the University would be paid from the state treasury.

### (3) The degree of autonomy the entity enjoys

The Governor of Louisiana appoints, and the state Senate approves, the members of the Board of Trustees for State Colleges and Universities, the body with the authority to supervise and manage the University. La.Rev.Stat.Ann. §§ 17:3218, 17:1831. The Board in turn appoints the President of the University, who holds office at the pleasure of the Board. La.Rev.Stat.Ann. § 17:3302(A). Various other state boards, commissions, and branches of state government also have authority to supervise and manage certain functions of the University. For example, the Board of Regents supervises the general powers of the Board, La.Rev.Stat.Ann. § 17:3351(A), and the State Bond Commission controls the issuance of notes, bonds or certificates of indebtedness, La.Rev.Stat. Ann. § 17:3351(A)(4).

### (4) Whether the entity is concerned primarily with local, as opposed to statewide, problems

Louisiana law states that the University's purpose is to provide for the education of the people of Louisiana. La.Rev.Stat. Ann. § 17:3220. Although the University is only one component of the State Colleges and Universities system, a similar statute to La.Rev.Stat.Ann. § 17:3220 formed the basis for our conclusion in *Darlak* that the DHHR was concerned with statewide health problems and therefore a state agency. *Darlak*, 814 F.2d at 1060.

### (5) & (6) Whether the entity has the right to sue and be sued in its own name; whether the entity has the right to hold and use property

Although the Board has the right to sue and be sued in its own name, and to hold and use property, the University does not.[6] La.Rev.Stat.Ann. §§ 17:3351(A)(1), 17:3351(A)(6). Because state law establishes that the Board is a part of the executive branch of the state government, these last two factors suggest that the University, as supervised by the Board, is an arm of the state. In combination, these six *Minton* factors firmly support the district court's conclusion that the University is an arm of the state and is immune from suit under the Eleventh Amendment.

---

**6.** Even if the University could sue and be sued in its own name, such a grant of authority by the state does not amount to a waiver of Eleventh Amendment immunity. *Usry v. Louisiana Department of Highways*, 459 F.Supp. 56, 63 (E.D.La.1978).

### 2. Suit against Albert Davis

■ Delahoussaye named Albert Davis, the campus police officer who informed the New Iberia Police Department of the incidents in the University's restrooms, as a defendant. Delahoussaye, however, named Albert Davis as a defendant only in his official capacity as an employee of the University. Thus, as Delahoussaye concedes, Albert Davis is immune from suit under the Eleventh Amendment if the University is immune.[7] *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (a state employee sued in his official capacity is not a suit against the individual but a suit against the official's office). Because we agree with the district court that the Eleventh Amendment bars Delahoussaye's suit against the University, we also must conclude that it bars suit against Albert Davis in his official capacity. We conclude, therefore, that the district court properly granted summary judgment in favor of the University and Albert Davis.

### B. Due Process and Equal Protection

■ The Fourteenth Amendment to the United States Constitution protects individuals from arbitrary and unreasonable government actions. *Thompson v. Gallagher,* 489 F.2d 443, 446 (5th Cir.1973). In many cases, of which this is one, the specific clause of the Fourteenth Amendment under which we test the government action makes little difference. *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954); *Gallagher,* 489 F.2d at 447. Because Delahoussaye does not assert the infringement of a fundamental right, and does not contend that he is a member of a protected or suspect class, we subject the government action only to the most minimal scrutiny.[8] *Kelley v. Johnson,* 425 U.S. 238, 247–48, 96 S.Ct. 1440, 1445–46, 47 L.Ed.2d 708 (1976). For purposes of either a due process or an equal protection analysis, we need to determine only whether the government action is a rational means of advancing a legitimate governmental purpose. *Gallagher,* 489 F.2d at 447.

The City argues, and the district court found, that the City removed Delahoussaye from its re-employment list in order to protect the police department from acts "prejudicial to departmental service and contrary to the public interest."[9] Affidavit of the Chief of Police of New Iberia, Steven L. Davis (Chief Davis). Delahoussaye does not argue that such a purpose is not legitimate. Rather, Delahoussaye argues that removing him from the re-employment list was not a rational means of accomplishing that purpose because the City based its decision solely on the fact that he had been detained and questioned by another police department. A detention in itself, Delahoussaye argues, is not probative of wrongdoing. The City, according to Delahoussaye, therefore had no reason to believe that its action in removing him from its re-employment list would further its interest in protecting the Department or the public.

The leading case in this area is *Schware v. Board of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), in which the State of New Mexico attempted to prohibit Schware from taking the bar examination because of his past membership in the Communist Party and his previous arrest record. The Supreme Court, employing a rational basis test, concluded that Schware's arrest record was wholly insuffi-

---

7. Delahoussaye admits in his response to the University's motion for summary judgment that "if his claims against the University are barred by the Eleventh Amendment, his claims against Albert Davis are similarly barred."

8. Delahoussaye does not specify the classification to which he objects. Presumably, his equal protection argument is that the City improperly treats individuals who have been detained and questioned by another police department differ-

ently from individuals who have not been so detained.

9. The City removed Delahoussaye from its civil service re-employment list pursuant to Policy No. CS–201A(3) of the New Iberia Police Department Operations Manual, La.Rev.Stat.Ann. § 33:2500, which allows such a removal for "[t]he commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy."

cient to support the Board's finding of bad moral character. The Court reasoned:

> The mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct. An arrest shows nothing more than that someone probably suspected the person apprehended of an offense. When formal charges are not filed against the arrested person and he is released without trial, whatever probative force the arrest may have had is dissipated.

*Schware*, 353 U.S. at 241, 77 S.Ct. at 757.

Although the Supreme Court's decision in *Schware* contains broad language stating that an arrest, standing alone, is not proof that the individual actually engaged in misconduct, the Court also considered the circumstances surrounding Schware's arrests. The Court noted that no indication existed that Schware actually was guilty of the offenses for which he had been arrested. *Id.* at 242, 77 S.Ct. at 758. The first arrest was for violation of California's "very broad and vague" criminal syndicalism statute. *Id.* at 242, 77 S.Ct. at 758. The Court noted that the California police conducted mass arrests under this statute during a strike in which Schware participated in the 1930s, and the Court observed that the record did not indicate that Schware had been arrested because the

police suspected that he actually violated this statute.

Schware also had been arrested for violation of the Neutrality Act of 1917 because he allegedly recruited persons to go overseas to aid the Loyalists in the Spanish Civil War. *Id.* The Supreme Court noted that "[f]rom the facts in the record it is not clear that he was guilty of [this statute's] violation," and that "even if it be assumed that the law was violated, it does not seem that such an offense indicated moral turpitude—even in 1940." *Id.*

In the instant case, unlike *Schware*, the circumstances surrounding Delahoussaye's detentions indicate that the campus police detained Delahoussaye on suspicion that he committed illicit acts. In his affidavit, Chief Davis does not state that the City refused to re-employ Delahoussaye merely because he had been questioned by another police department. Chief Davis states that the City's decision to remove Delahoussaye "from the civil service re-employment list was a result of information obtained relative to the actions of David Delahoussaye in connection with the detentions/arrest by the University Police." In other words, Chief Davis indicates that Delahoussaye was not re-employed because he engaged in conduct prejudicial to the department on the occasions on which he was detained and not merely because of the detentions themselves.[10]

---

**10.** The City, after conducting an investigation into the circumstances that surrounded the detentions, based its decision, as Chief Davis's affidavit reveals, on Delahoussaye's improper conduct on the occasions in question rather than solely on the detentions themselves. According to Delahoussaye's deposition, Chief Davis told him that the Department would conduct a complete investigation concerning the incidents in the University restrooms, and at Delahoussaye's pre-disciplinary hearing, Chief Davis stated that the Department had completed its investigation. Furthermore, prior to Delahoussaye's pre-disciplinary hearing, Chief Davis realized that Delahoussaye had been detained by the University Police rather than convicted of misconduct, which manifests Chief Davis's investigation of the incidents.

Although the record does not reveal the precise scope of the City's investigation, it presumably included at least an examination of the University's investigative reports. The University, in its Memorandum in Support of its Motion

for Summary Judgment, stated that "the New Iberia Police Department requested Delahoussaye's file from the [the University] police pursuant to authorization by Delahoussaye [on his application for employment with the New Iberia Police Department]." In addition, in the University's Statement of Uncontested Material Facts, the University states that "[i]nformation concerning the plaintiff's alleged criminal activities at the University of Southwestern Louisiana was exchanged between the Campus Police Department and the New Iberia Police Department." Far from disputing these factual statements, Delahoussaye admits in his memorandum in opposition to the University's motion for summary judgment that "[t]he moving defendants are correct that there [are] no genuine disputes about material facts related to the claim against them." Delahoussaye defended solely on the grounds that the University had not shown that it was entitled to judgment as a matter of law. The investigative reports show that the campus police believed that Delahous-

Delahoussaye, however, vigorously asserts that he did not engage in such misconduct. For purposes of testing the rationality of the City's action under a minimal scrutiny test, however, the question is not whether Delahoussaye actually engaged in misconduct on the occasions at issue, but whether the City had sufficient reason to believe that he engaged in misconduct so that its action was not wholly arbitrary or irrational. Because the City rationally could have concluded that Delahoussaye engaged in conduct prejudicial to the Department and the public's interest on the two occasions in question, the district court properly rejected Delahoussaye's equal protection and substantive due process claims.

■■■■ Because, as the parties agree, Delahoussaye had a protected property interest in his name being retained on the City's civil service re-employment list, however, the Fourteenth Amendment also required the City to provide Delahoussaye with procedural due process. Procedural due process requires that an individual receive notice of a proposed action and an opportunity to present his side of the story. *See Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (procedural due process requires only that a plaintiff with a protected property interest be given notice and an opportunity to be heard prior to termination); *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Delahoussaye's hearing, we note, "though necessary, need not be elaborate." *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495.

Delahoussaye does not dispute that he received notice that the City proposed to remove his name from its re-employment list and that he attended a pre-disciplinary hearing accompanied by an attorney. Subsequent to that hearing, the City informed Delahoussaye that his name had been removed from the re-employment list. Delahoussaye appealed that decision to the Civil Service Board, which denied his appeal as untimely because the fifteen day appeal period had expired. On appeal to this court, Delahoussaye has not argued that these procedures were inadequate under the Fourteenth Amendment. Because the City's conclusion that Delahoussaye may have engaged in conduct prejudicial to the Department and the public interest was not wholly arbitrary or irrational, and because Delahoussaye received all of the process due him, the district court properly rejected Delahoussaye's claims against the City.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

---

saye engaged in improper conduct on the occasions at issue and support the City's conclusion that Delahoussaye had engaged in conduct prej- udicial to the Department and the public interest.