Glenda Cafer, Chairman Kansas Board of Cosmetology 2708 N.W. Topeka Blvd. Topeka, Kansas 66617-1139
Dear Ms. Cafer:
The Kansas State Board of Cosmetology has requested our opinion regarding the constitutionality of Senate Bill No. 165, Section 6, passed by the 1997 Legislature, amending K.S.A. 1996 Supp. 65-1904.
In relation to this issue, the following information was provided to us:
 "The Board is responsible for implementing and enforcing this legislation which concerns continuing education (CE) requirements for cosmetologists, cosmetology technicians, electrologists, and manicurists (licensees).
 "Historically, licensees have not been required to obtain CE prior to renewing their professional licenses. During the 1995 Legislative Session, legislation was passed which required all licensees renewing their license on and after July 1, 1996, to have obtained 20 hours of CE during the previous two year renewal period. During the 1997 Session, this requirement was amended by SB 165. Under the new law, all licensees renewing their license on or after July 1, 1997, have to have completed a minimum of five clock hours annually (10 for electrologists) on health and safety related issues in the practice of cosmetology. All licensees must renew their license every two years.
 "In trying to implement this legislation, the Board became concerned over the effect of this new law on licensees attempting to renew their license between July 1, 1997 and July 1, 1999. The law has the effect of retroactively requiring licensees to have obtained 5 (10 for electrologists) CE hours in public health and safety between July 1, 1995 and June 30 1996, and another 5 (10 for electrologists) hours between July 1, 1996 and June 30, 1997, when these licensees had no knowledge during this two year period that this would be required of them when they renewed their licenses after July 1, 1997. In essence, this law as written precludes currently licensed individuals from complying with the bill's CE requirements, making it impossible for them to renew their license for a period of one year and possibly two.
 "The Board strongly suspects that the effect described above was not the intent of the legislature when it passed this law."
The Board's suspicions regarding legislative intent are well founded. As the Board is aware by now, five legislators who were instrumental in the passage of S.B.165 have provided written statements that the effects as you describe were not intended and that the bill as written does not accurately express legislative intent. The Governor has provided a comparable statement. In others words, a legislative mistake was inadvertently made.
 Substantive Due Process
If legislative acknowledgment of a mistake made in the language of a statute were all that was required to find the statute unconstitutional, our inquiry could end here. However, such is not the case. See Hand v. StateFarm Mutual Automobile Insurance Company,2 Kan. App. 2d 253 (1978); Board of Riley CountyCommissioners v. City of Junction City, 233 Kan. 947
(1983). In order to find a statute unconstitutional, there must be a constitutional basis for such determination. The constitutional basis to which we are immediately drawn is the Fourteenth Amendment to the United States Constitution, commonly known as the Due Process Clause which provides as follows:
 "[N]or shall any State deprive any person of life, liberty, or property, without due process of law. . . ."
The essence of due process is fairness by our government in relation to its citizens. Chiles v. State,354 Kan. 888 (1994), citing Ross v. Moffit, 417 U.S. 600,41 L.Ed.2d 341, 94 S.Ct. 2437 (1974). By virtue of this constitutional provision, citizens are guaranteed protection against arbitrary or unreasonable government action. This concept has been developed under the name of "substantive due process."
 "[The] substantive due process clause protects against unreasonable and arbitrary governmental decisions which deprive citizens of property or liberty interests and which are unrelated to a legitimate governmental interest." Anglemyer v. Hamilton County Hospital, 848 F. Supp. 938 (D.Kan. 1994).
Other words which have been used to describe the type of governmental action against which citizens receive substantive due process protection are "capricious,"Moulton v. City of Beaumont, 991 F.2d 227 (9th Cir. 1993), "irrational," Feliciano v. City of Cleveland, 988 F.2d 696 (6th Cir. 1993) and "sheer unreasonableness," Swank v. Smart, 898 F.2d 1247 (7th Cir. 1990). The critical constitutional inquiry is whether legislation produces arbitrary and capricious results, Eastlake v. Forest City Enterprises, 426 U.S. 688,49 L.Ed.2d 132, 96 S.Ct. 2358 (1976), or leads to irrational results. Feliciano v. City of Cleveland,supra.
The questions to be asked concerning a possible substantive due process violation are whether the legislation has a real and substantial relation to the objective sought, whether it is reasonable in relation to the subject, and whether it was adopted in the interest of the community. State ex rel. Schneider v.Liggett, 223 Kan. 610 (1978); approved in State ex rel.Stephan v. Smith, 242 Kan. 336 (1987), Chiles v. State,254 Kan. 888 (1994) and Clements v. United StatesFidelity Guaranty Co., 243 Kan. 124 (1988). These questions are referred to as the "rational basis test,"Anglemyer, supra at 942, which requires only the "most minimum scrutiny," of governmental action, Delahoussayev. City of New Iberia, 937 F.2d 144, 149 (5th Cir. 1991), when, as here, neither a fundamental right nor a suspect class is involved. Id.
Certainly, a legislative requirement that the Board's licensees obtain continuing education on health and safety related issues is a reasonable method of protecting the public's interest in its health, safety and welfare. Thus, establishment of such a CE requirement is a "rational means of advancing a legitimate legislative purpose." Delahoussaye v. Cityof New Iberia, supra at 149. Such a requirement, without more, would pass the rational basis test and would not violate any licensee's right to substantive due process of law. As pointed out in the Board's opinion request, however, there is more: the problematic time frame embodied in Section 6 of S.B. 165, which amends K.S.A. 1996 Supp. 65-1904(a).
 "[F]or licenses renewed on and after July 1, 1997,
furnishing evidence satisfactory to the board of the completion of a minimum of five clock hours annually of continuing education on health and safety related issues in the practice of cosmetology approved by the board." (Emphasis added.)
We agree with the Board's assessment that the effect of the statute as written precludes renewal of licenses which expire any month during the next year (July 1, 1997 through June 30, 1998) and of a great many licenses which expire during the subsequent year (July 1, 1998 through June 30, 1999). This result is due to the statute's requirement that "for licenses renewed on and after July 1, 1997," licensees must provide evidence of completion of five CE hours in health and safety related issues in each of the two years preceding their license renewal date. Because prior to July 1, 1997 this was not required as a condition for renewal, few if any licensees will be able to provide such evidence during the next two years.
It is against this time frame scenario that we must address the questions appropriate to a substantive due process inquiry, i.e., whether the legislation has a real and substantial relation to the objective sought, whether it is reasonable in relation to the subject, and whether it was adopted in the interest of the community. In our opinion, the response to all three questions must be no.
The objective sought was to tailor licensees' CE requirement to the legitimate purpose of protecting the health, safety and welfare of the public. However, Senate Bill No. 165, Section 6 does not have a real and substantive relation to this objective because of its effect. Rather than promoting public health, safety and welfare, it results in the disqualification of a great many currently licensed persons from license renewal eligibility. Because of the time frame established by Section 6, this statute cannot be said to be reasonable in relation to the purpose of a CE requirement for persons licensed by the Board. While this legislation may ostensibly have been adopted in the interest of public protection, the effect of Section 6 does not advance this interest. In fact the statute would harm the interests of those in the community who rely on the continuing availability of licensed cosmetologists to cut, color or perm their hair, as a great many currently licensed persons would not qualify for license renewal and consequently would lose their ability to lawfully practice their profession.
We are mindful of the principle that due process requirements are violated by licensing legislation only where the legislation is so unreasonable as to arbitrarily and unnecessarily interfere with, or destroy, personal or property rights. Payne v. Kansas,248 U.S. 112, 63 L.Ed. 153, 39 S.Ct. 21 (1918). To comply with this constitutional principle, a challenged requirement need only be rationally related to fitness or capacity for the occupation, Schware v. Board of BarExaminers, 353 U.S. 232, 1 L.Ed.2d 796, 77 S.Ct. 752
(1957), and promote public health, safety and welfare.State ex rel. Schneider v. Liggett, supra. A regulatory provision which is unreasonable and serves no public purpose does not comport with due process. In the Matterof New York County Lawyers Association v. Roel, 3 N.Y.2d 224
(1957). In our opinion, because the effect of Section 6 is to disqualify many to most currently licensed persons from license renewal, the statute is not rationally related to fitness or capacity to practice cosmetology or any of the other occupations licensed by the board. This type of wholesale disqualification is unreasonable and clearly does not serve or promote any legitimate public purpose. This law produces the type of arbitrary, capricious and irrational results which the Due Process Clause protects citizens against.
We thus have no difficulty in opining that Section 6 of Senate Bill No. 165 is unreasonable, arbitrary and capricious in its effect and is thus a violation of licensees' constitutional guarantee to substantive due process — assuming that a person has a property interest in their license to practice cosmetology or one of the other vocations licensed by the Board.
 Property Interest in License
To determine whether due process requirements apply in the first place, the nature of the interest affected must be within the Fourteenth Amendment's protection of liberty or property. Board of Regents v. Roth,408 U.S. 564, 33 L.Ed.2d 548, 92 S.Ct. 2701 (1972).
 "When an interest involving life, liberty or property is implicated, due process considerations apply. However, a protected due process right must encompass an interest recognized by the Constitution. To prevail on their due process claim, appellants must show that they possess a definite liberty or property interest and that this interest was abridged, under color of state law, without appropriate process." Kansas Racing Management, Inc. v. Kansas Racing Commission, 244 Kan. 343, 354 (1989) (Citations omitted.)
In other words, whether a violation of due process has occurred depends initially upon whether "property" has been taken. State ex rel. Stephan, 242 Kan. 336
(1987).
What will be considered property for purposes of due process protection has been established by the United States Supreme Court:
 "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. . . .
 "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents v. Roth, supra, 408 U.S at 577, 33 L.Ed.2d at 561.
In a companion case, the Court elaborated on its definition:
 "[A] person's interest in a benefit is a `property' interest for due process purposes if there are. . . rules or mutually explicit understandings that support his claim of entitlement to the benefit. . . ." Perry v. Sindermann, 408 U.S. 593, 601, 33 L.Ed.2d 570, 92 S.Ct. 2694, 2699 (1972).
Whether a license to practice a profession or an occupation falls within the Supreme Court's expressed definition of property was addressed in Richardson v.Town of Eastover, 922 F.2d 1152, 1156-1157 (4th Cir. 1991):
 "A license issued by the state which can be suspended or revoked only upon a showing of cause creates a property interest protected by the Fourteenth Amendment. . . . Where a license or similar benefit may be withdrawn at will, however, the holder of the license or benefit has no property interest because he has no legitimate claim of entitlement to something that can be withdrawn at the whim of the grantor. . . .
 "While an entitlement is required before a property interest is implicated, the entitlement need not be given explicitly. An entitlement to a renewal may be implied, for instance, from policies, practices and understanding, if state law or other sources support a finding of such an entitlement. . . .
 "Similarly, mutual expectations may create an entitlement in a license. For instance, a state-issued license for the continued pursuit of the licensee's livelihood, renewable periodically on the payment of a fee and revocable only for cause, creates a property in the licensee."
See also Kansas Racing Management, Inc. v. KansasRacing Commission, supra (holder of racetrack facility owner license or facility manager license has property right in license); State ex rel. Stephan v. Adam,243 Kan. 619 (1988) (member of the bar, licensed to practice law, has property right in license); Brown v.South Carolina State Board of Education, 391 S.E.2d 866
(S.C. 1990) (a teacher certificate necessary for employment is a protected property interest); Green v.Brantley, 719 F. Supp. 1570 (N.D.Ga. 1989) (flight examiner had due process property interest in his Federal Aviation Administration "Certificate of Authority" which afforded means by which he earned his living); Medina v. Rudman, 545 F.2d 244 (1st Cir. 1976) (once racing track license is granted, property right under state law comes into being).
Based on the United States Supreme Court's definition of "property" and the cases cited above, it is our opinion that the holder of a cosmetology license, cosmetology technician license, manicurist license or electrologist license has a property interest in the license which is protected by the Due Process Clause ofFourteenth Amendment to the United States Constitution. Consequently, it is further our opinion that the continuing education requirement as provided in Section 6, is unreasonable, arbitrary and capricious in its effect and is unrelated to a legitimate governmental purpose. Senate Bill No. 165, Section 6, thus violates these licensees' rights to substantive due process of law as guaranteed by the Fourteenth Amendment.
Very truly yours,
 CARLA J. STOVALL Attorney General for Kansas
 Camille Nohe Assistant Attorney General
CJS:JLM:CN:jm