JOHN L. RENNE          *       NO. 2023-CA-0798

VERSUS                *

                         COURT OF APPEAL

THE BOARD OF           *
SUPERVISORS FOR THE        FOURTH CIRCUIT
UNIVERSITY OF LOUISIANA   *
SYSTEM, UNIVERSITY OF      STATE OF LOUISIANA
NEW ORLEANS, PETER FOS   * * * * * * *
AND JOHN NICKLOW

 

 

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-06334, DIVISION "E"
Honorable Omar Mason, Judge
* * * * * *
**Chief Judge Terri F. Love**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Tiffany Gautier Chase, Judge Nakisha Ervin-Knott)

Clarence F. Favret, III
James C. Cronvich
Jordan T. LeBlanc
FAVRET CARRIERE CRONVICH
650 Poydras Street, Suite 2300
New Orleans, LA 70130

      COUNSEL FOR PLAINTIFF/APPELLEE, DR. JOHN RENNE

Linda J. L. Clark
Corey L. Pierce
Monica G. Moton
DECUIR CLARK & ADAMS, L.L.P.
732 North Boulevard
Baton Rouge, LA 70802

      COUNSEL FOR DEFENDANT/APPELLANT, BOARD OF SUPERVISORS FOR THE UNIVERSITY OF LOUISIANA SYSTEM; UNIVERSITY OF NEW ORLEANS; DR. PETER FOS; DR. JOHN NICKLOW; & DR. RICHARD HANSEN

 

**APPEAL CONVERTED TO WRIT; WRIT GRANTED IN PART; DENIED IN PART**
**MAY 13, 2024**

This appeal arises from Dr. John Renne's resignation from his tenured professor position with the University of New Orleans ("UNO"). After resigning, Dr. Renne filed suit alleging that he was owed unpaid wages, and he asserted arguments related to his alleged constructive termination. The defendants filed a Motion for Summary Judgment seeking the dismissal of UNO and two former administrators. The trial court found that genuine issues of material fact exist as to the nature of the administrators' actions and that UNO was a proper party defendant.

The denial of a motion for summary judgment is not an appealable judgment even if certified as a final judgment. However, as the appeal was sought within the time period for filing an application for supervisory review, we convert the appeal to an application for supervisory review and address the merits.

UNO, as a public university, cannot be sued as a singular entity. Therefore, we grant this portion of the writ, reverse the trial court's judgment as to UNO, and dismiss UNO. However, our review of the record reveals genuine issues of material fact exist as to whether Drs. Fos and Hansen acted intentionally, willfully, or fraudulently, such that the grant of summary judgment on this issue is

1

precluded. Thus, the trial court did not err by denying summary judgment on this issue. The writ is granted in part and denied in part.

### *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

In 2014, Dr. Renne was a tenured professor at UNO as an Associate Professor of Planning and Transportation Studies and Director of the Merritt C. Becker, Jr. Transportation Institute. Around May 2014, Dr. Renne was approached by a university in Perth, Australia and was offered a position for almost twice his UNO salary. Dr. Renne informed UNO of this offer through Dr. Peter Fos, then UNO President, and Dr. Richard Hansen, the Interim Provost. While he intended to accept the position in Australia, Dr. Renne gave UNO the opportunity to match the offer.

Following discussions with Dr. Hansen, Dr. Renne contends they agreed upon an increase in his base salary to $145,000/year. However, Dr. Renne asserts, Dr. Hansen and Dr. Fos met and decided to award Dr. Renne an increase in his base salary to $116,000, with an additional $29,000 stipend for serving as an Associate Provost. In 2015, Dr. John Nicklow, serving as the Provost, informed Dr. Renne that his position as an Associate Provost would be removed and that Dr. Renne's base salary would revert to $116,000. Finding no resolution with Dr. Nicklow, Dr. Renne resigned from UNO and accepted a position at Florida Atlantic University with a reduced salary.

Dr. Renne filed a Petition for Unpaid Wages, Penalties, Attorney's Fees, and Damages against Dr. Fos, Dr. Nicklow, and the Board of Supervisors for the University of Louisiana System ("Board"), UNO. Dr. Renne asserted that UNO owed him $16,111, as well as maintaining claims for breach of contract, constructive termination, negligent misrepresentation, intentional

2

misrepresentation, and detrimental reliance. Dr. Renne was granted a partial motion to dismiss, removing Dr. Nicklow as a defendant. Thereafter, Dr. Renne filed a motion and memorandum for leave to file his first supplemental and amended petition, which the trial court granted. Dr. Renne added Dr. Hansen as a defendant. Subsequently, the Board, Dr. Fos, Dr. Hansen, and UNO (collectively "Defendants") filed a Motion for Summary Judgment contending UNO was not a proper procedural party and that Drs. Fos and Hansen possessed qualified immunity for duties performed in their normal course of business.[1]

The trial court denied Defendants' Motion for Summary Judgment and found that UNO was a proper party and that questions were presented regarding Drs. Fos and Hansen's alleged fraudulent intentions and/or misrepresentation such that qualified immunity would not apply. These two portions of the judgment were designated as partial final judgments pursuant to La. C.C.P. art. 1915. Defendants filed a Notice of Intent for the rulings not certified as final and a Motion for Suspensive Appeal regarding the attempted dismissal of UNO, Dr. Fos, and Dr. Hansen.

On appeal, Defendants assert that UNO cannot be sued, pursuant to La. R.S. 17:3351, and that Drs. Fos and Hansen should be dismissed based on the immunity outlined in La. R.S. 9:2798.1.

***JURISDICTION***

"Appellate courts have the duty to determine, *sua sponte*, whether subject matter jurisdiction exists, even when the parties do not raise the issue." *State*

---

[1] Defendants raised numerous other substantive bases for summary judgment. However, those issues were addressed in an application for supervisory review, and a disposition was rendered. *John L. Renne v. Bd. of Supervisors for the Univ. of La. System, Univ. of New Orleans, Peter Fos, John Nicklow, & Richard Hansen*, 23-0820 (La. App. 4 Cir. 1/23/24).

3

*through Morrell v. City of New Orleans through Landrieu*, 17-0110, p. 8 (La. App. 4 Cir. 12/21/17), 234 So. 3d 1071, 1077. "This Court lacks subject matter jurisdiction if the appeal as lodged does not contain a valid, final judgment." *Id.* "A judgment that determines the merits in whole or in part is a final judgment." La. C.C.P. art. 1841. "A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment." *Id.* "A final judgment is appealable in all causes in which appeals are given by law." La. C.C.P. art. 2083(A). "An interlocutory judgment is appealable only when expressly provided by law." La. C.C.P. art. 2083(C).

The trial court's judgment provides, in pertinent part:

> IT IS ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment seeking the dismissal of the University of New Orleans as a party without proper procedural capacity to be sued as a party under La. R.S. 17:3351 is DENIED with said judgment deemed a partial final judgment in accordance with La. Civil Code article 1915 with all rights of appeal.
> . . . .
> IT IS ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment seeking dismissal of Dr[.] Peter Fos, Dr. Richard Hansen of the University of New Orleans under La. R.S. 9:2798.1 is DENIED with said judgment deemed a partial final judgment in accordance with La. Civil Code article 1915 with all rights of appeal.

"However, a trial court's certification pursuant to La. C.C.P. art. 1915(B) is not determinative of jurisdiction." *McGaha v. Franklin Homes, Inc.*, 21-0244, p. 23 (La. App. 4 Cir. 2/4/22), 335 So. 3d 842, 857, *writ denied*, 22-00374 (La. 4/26/22), 336 So. 3d 897. "A trial court's certification of an interlocutory judgment as 'final' pursuant to La. C.C.P. art. 1915(B)(1) does not transform the interlocutory judgment into a judgment subject to an immediate appeal." *Id.*, 21-0244, pp. 24-25, 335 So. 3d at 858.

4

"The Code of Civil Procedure expressly provides that a judgment denying a motion for summary judgment is not appealable." *Elysian, Inc. v. Neal Auction Co., Inc.*, 20-0674, 20-0675, p. 7 (La. App. 4 Cir. 7/21/21), 325 So. 3d 1075, 1082 (citing La. C.C.P. art. 968). *See also Mitchell v. Villien*, 08-1470, p. 1, n.2 (La. App. 4 Cir. 8/26/09), 19 So. 3d 557, 560. Moreover, "this Court has consistently recognized that 'the denial of a motion for summary judgment is not appealable even if certified as final by the trial court judge.'" *Precept Credit Opportunities Fund, LP v. Dave*, 23-0104, 23-0105, p. 9 (La. App. 4 Cir. 10/3/23), 376 So. 3d 210, 217 (quoting *Mercato Elisio, L.L.C. v. City of New Orleans*, 22-0228, p. 22, n.7 (La. App. 4 Cir. 12/21/22), 356 So. 3d 505, 518).

The trial court's judgment is interlocutory in nature and also incapable of certification as a final and appealable judgment. "Thus, '[t]he proper procedural vehicle to seek review of an interlocutory judgment that is not immediately appealable is an application for supervisory writ.'" *Jacobs v. Metzler-Brenckle*, 20-0585, 20-0607, p. 13 (La. App. 4 Cir. 5/26/21), 322 So. 3d 347, 356 (quoting *Delahoussaye v. Tulane Univ. Hosp. & Clinic*, 12-0906, 12-0907, p. 4 (La. App. 4 Cir. 2/20/13), 155 So. 3d 560, 562).

This Court is vested with the discretionary power to convert an appeal of an interlocutory judgment into an application for supervisory review. The intial inquiry posed when we are determining whether to exercise our discretion to convert an appeal to an application for supervisory review is whether "the motion for appeal was filed within the thirty-day delay allowed under Rule 4–3 of the Uniform Rules—Courts of Appeal[2] for the filing of an application for supervisory

---

[2] Rule 4-3, Uniform Rules – Courts of Appeal provides, in pertinent part:

5

writs." *Ramirez v. Evonir, LLC*, 14-1095, p. 5 (La. App. 4 Cir. 4/9/15), 165 So. 3d 260, 263 (footnote added).

The trial court rendered judgment on October 9, 2023. The Motion and Order for Suspensive Appeal was filed on October 31, 2023, clearly within the thirty-day time delay. This factor weighs in favor of converting the appeal to a writ.

Additionally, we consider the factors enumerated in *Herlitz Const. Co., Inc. v. Hotel Invs. of New Iberia, Inc.*, 396 So. 2d 878 (La. 1981). "[T]he primary consideration of *Herlitz* is that review and decision by us would terminate the litigation." *Ramirez*, 14-1095, p. 5, 165 So. 3d at 263. Here, a reversal of the trial court's judgment would dismiss UNO and/or Drs. Fos and Hansen from the litigation. As such, we find this case warrants the exercise of our discretionary powers to convert this appeal to an application for supervisory review. We proceed to an examination of the merits of Defendants' contentions.

## *SUMMARY JUDGMENT*

"The purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Hines v. Garrett*, 04-0806, p. 7 (La. 6/25/04), 876 So. 2d 764, 769 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356,

---

The judge who has been given notice of intention as provided by Rule 4-2 shall immediately set a reasonable return date within which the application shall be filed in the Court of Appeal. The return date in civil cases shall not exceed 30 days from the date of notice of the judgment, as provided in La. C.C.P. art. 1914. In criminal cases, unless the judge orders the ruling to be reduced to writing, the return date shall not exceed 30 days from the date of the ruling at issue. When the judge orders the ruling to be reduced to writing in criminal cases, the return date shall not exceed 30 days from the date the ruling is signed. In all cases, the judge shall set an explicit return date; a Court of Appeal shall not infer a return date from the record.

89 L.Ed.2d 538 (1986) (internal quotations omitted)). The summary judgment procedure is favored in Louisiana and "is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La. C.C.P. art. 966(A)(2).

"[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). The exclusive list of documents that may be filed in support of or in opposition to a motion for summary judgment allows "pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, certified copies of public documents or public records, certified copies of insurance policies, authentic acts, private acts duly acknowledged, promissory notes and assignments thereof, written stipulations, and admissions." La. C.C.P. art. 966(A)(4)(a).

The burden of proving entitlement to summary judgment rests with the mover. La. C.C.P. art. 966(D)(1). However, "if the mover will not bear the burden of proof at trial on the issue" being examined in the motion, then "the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense." *Id*. Instead, the mover must "point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id*. The opposing party is then required "to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id*.

"A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could only reach one conclusion, there is no need for trial on that issue, and summary judgment is appropriate." *Reddick v. State*, 21-0197, p. 6 (La. App. 4 Cir. 9/29/21), 328 So. 3d 504, 508. Further, "[a] fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Id.*

"Appellate courts review judgments granting or denying motions for summary judgment *de novo* using the same criteria district courts consider when determining if summary judgment is proper." *Fertitta v. Regions Bank*, 20-0300, p. 9 (La. App. 4 Cir. 12/9/20), 311 So. 3d 445, 452.

***University of New Orleans***

Defendants contend that La. R.S. 17:3351(A)(1) mandates that only the Board can be sued, which means UNO, as an improper procedural party, should be dismissed from the suit.

La. R.S. 17:3351(A)(1) provides:

> A. Subject only to the powers of the Board of Regents specifically enumerated in Article VIII, Section 5 of the Constitution of Louisiana, and as otherwise provided by law, each postsecondary system management board as a body corporate shall have authority to exercise power necessary to supervise and manage the day-to-day operations of institutions of postsecondary education under its control, including but not limited to the following:
> (1) Sue and be sued, including the right to recover all debts owing to the board or any university or college under its management, and to retain legal counsel therefor.

The trial court stated at the hearing:

> [T]he Court finds that in connection with the motion for summary judgment regarding the statutory immunity of UNO, the Court finds that the *Delahoussaye* case is inapplicable to this matter and doesn't set forth any authority for not being able to bring suit against University of New Orleans. The Court also finds that under the relevant statutes, which is actually Louisiana Revised Statute Title 13:5601, it says -- 56 -- 5106A says, "No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."
>
> And with respect to the title – the section 3351 which we talked about earlier, I think that's the 17:3351, it merely outlines the powers of the board of universities or state universities. It doesn't necessarily provide immunity to UNO itself. As such, the Court finds that there is no entitlement to judgment as a matter of law on that issue with respect to immunity of UNO under the statutory immunity or under the 11th amendment. As such, the Court denies the motion for summary judgment in that regard.

Defendants maintain that the trial court incorrectly disregarded *Delahoussaye v. City of New Iberia*, 937 F.2d 144 (5th Cir. 1991), because "[t]he court in *Delahoussaye* explicitly stated that although the Board has the right to sue and be sued, the University does not, supporting the conclusion that the University, supervised by the Board, is an arm of the state and immune from suit under the Eleventh Amendment."

While we agree that La. R.S. 17:3351 outlines the powers of the Board, we disagree with the trial court's finding that *Delahoussaye* is inapplicable.

In *Delahoussaye*, the United States Fifth Circuit was tasked with determining whether the Eleventh Amendment to the United States Constitution provided immunity to the University of Southwestern Louisiana for a suit in federal court. 937 F.2d at 147. The Court found that the University was an arm of the state, such that immunity attached. *Id*. at 148. The Court stated that the University could not sue or be sued. *Id*. *See also Raj v. Louisiana State Univ.*, 714

9

F.3d 322, 329 (5th Cir. 2013); *Richardson v. S. Univ.*, 118 F.3d 450, 456 (5th Cir. 1997). However, Dr. Renne contends *Delahoussaye* is federal, nonbinding jurisprudence.

The Louisiana Third Circuit Court of Appeal examined an exception of no cause of action seeking to dismiss Northwestern State University ("NSU") because the Board of Trustees was the correct defendant. *Marson v. Nw. State Univ.*, 607 So. 2d 1093, 1095 (La. App. 3d Cir. 1992). The Court found that the governing body of the public university was the proper defendant and that NSU was properly dismissed. *Id.*

Like *Marson*, we find UNO is not a proper defendant. UNO may be sued through the proper defendant, which is the governing body, the Board. The Board is already a defendant in the case *sub judice*. Accordingly, we find the trial court erred by denying this portion of Defendants' Motion for Summary Judgment. We grant this portion of the writ, reverse that portion of the trial court's judgment, and dismiss UNO.

### Drs. Fos and Hansen

Defendants assert that Drs. Fos and Hansen have qualified immunity, pursuant to La. R.S. 9:2798.1, by virtue of their administrative positions with UNO. Conversely, Dr. Renne contends that Drs. Fos and Hansen "did not act within their assigned duties and had acted fraudulently, intentionally and willfully to misrepresent to Dr. Renne that his salary was in fact going to be higher than what they submitted for approval."

La. R.S. 9:2798.1 provides immunity to public entities, officers, and employees for discretionary acts performed within the course and scope of their lawful powers and duties. La. R.S. 9:2798.1 provides:

10

A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.

B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

C. The provisions of Subsection B of this Section are not applicable:

(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or

(2) **To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.**

D. The legislature finds and states that the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the Constitution of Louisiana.

(Emphasis added).

The trial court addressed the issue as follows:

Finally, with respect to the claims of qualified immunity of the University of New Orleans officials of Fos and Hanson [sic], the qualified immunity under the statute, Louisiana Revised Statute Title 9:2798.1 talks about the qualified immunity that's alleged by these particular defendants. Part C of that states that provisions of subsection B are not applicable to acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct. In this case the plaintiff – the plaintiff is alleging, [h]as sufficiently alleged, and presented

11

testimony and corroborating evidence sufficient to at least show that allegations of fraudulent intention of misconduct on the part of the two officials from UNO who he claims misrepresented, fraudulently misrepresented or intentionally misrepresented the terms of his contract for purposes of keeping him at UNO as a professor. As such, the Court finds that the motion for summary judgment with respect to the qualified immunity of the two individual defendants, Fos and Hanson [sic], should be and is hereby denied.

In support of their contention that Drs. Fos and Hansen are immune from suit and should be dismissed, Defendants attached: the bylaws of the Board; the rules and regulations of the Board; the UNO employee handbook; the affidavit of Dr. Nicklow; the letter informing Dr. Renne that his stipend will not be renewed; e-mails between Dr. Nicklow and Dr. Renne; internal personnel documents regarding Dr. Renne; the Board's agendas and minutes; documents reflecting personnel changes (raises/decreases); excerpts from Dr. Hansen's deposition; and excerpts from Dr. Renne's deposition.

In opposition, Dr. Renne submitted contested issues of material fact; Dr. Renne's affidavit; e-mails between Drs. Renne, Hansen, and Fos; e-mails between Dr. Renne and human resources; an e-mail from Dr. Fos to Dr. Nicklow; the letter informing Dr. Renne his stipend would not be renewed; Dr. Fos' deposition; and Dr. Hansen's deposition.

The exhibits submitted in support of and in opposition to Defendants' Motion for Summary Judgment present conflicting testimony. Dr. Fos testified that he was not involved in negotiating salaries but that there were exceptions wherein he would be involved in salary negotiations. Dr. Hansen possessed the authority to set salaries for Dr. Fos' signature. Further, Dr. Fos stated that Dr. Nicklow did not present the termination of Dr. Renne's stipend as a result of

12

financial constraints.

Defendants were aware of the specifics of Dr. Renne's offer from the university in Perth. Dr. Fos stated that Dr. Hansen came to him in an attempt to retain Dr. Renne. Dr. Fos authorized a counter offer. Dr. Fos met with Drs. Renne and Hansen, wherein he agreed to an increase in salary and in Dr. Renne's responsibilities. However, Dr. Fos provided that a set salary was not agreed upon in that meeting. Dr. Fos placed Dr. Hansen in charge of the negotiating and stated that Dr. Hansen reported to him.

Dr. Hansen, however, testified that he did not have the authority to negotiate salaries but that he did involve himself in negotiating salaries with professors sometimes as a supervisor. Dr. Hansen did not recall whether he informed Dr. Renne that the Board would have to give final approval for any salary increase. Dr. Hansen had the authority to recommend stipends. Dr. Hansen did not recall Dr. Renne informing him that he was not interested in a stipend approach to increasing his pay and that he wanted to increase his base salary. Dr. Hansen testified that he worked diligently with Dr. Fos to retain Dr. Renne because "[h]e was an excellent faculty member, and he ran an important center."

Dr. Renne attested in his affidavit that Dr. Fos instructed him to negotiate with Dr. Hansen. Dr. Renne stated that Dr. Hansen offered him a $145,000.00 nine-month base salary, which he accepted, and turned down the Perth offer. Once human resources contacted Dr. Renne with options for reaching the new salary, Dr. Renne believed the options did not match the agreement he made with Dr. Hansen. Dr. Renne e-mailed Dr. Hansen regarding this concern, to which Dr. Hansen replied, "We can make this scenario work -that is what I agreed to in the offer." Dr. Renne also contends Dr. Fos represented that he had the authority to make the

decisions regarding the new salary. Dr. Renne also testified in his deposition that he informed Drs. Fos and Hansen that he "would only accept [the counteroffer from UNO] if the academic base salary would be guaranteed." He stated that Dr. Fos replied, "I would do the exact same thing if I were you."

The e-mails attached to Dr. Renne's opposition to the Motion for Summary Judgment depict Dr. Hansen attempting to find a feasible solution for funding Dr. Renne's salary increase. Dr. Renne conveyed, in his e-mails to human resources, that his new base salary would be $145,000.00, which would not be decreased if his position as Associate Provost was removed. Dr. Hansen was copied on the e-mails. Further, Dr. Renne e-mailed Dr. Hansen with an outline of their agreed upon increase in salary, including $145,000.00 as Dr. Renne's new base salary. Dr. Hansen replied, "We can make this scenario work—that is what I agreed to in the offer." However, the e-mails between human resources and Dr. Hansen reflect negotiations of a new base salary of $116,000.00 with a $29,000.00 stipend. Dr. Renne was not included on these e-mails.

Allegations that Drs. Fos and Hansen acted fraudulently, intentionally, or willfully to misrepresent to Dr. Renne that his base salary would remain $145,000.00 is largely based on credibility. However, "[a] summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith." *Coto v. J. Ray McDermott, S.A.*, 99-1866, p. 4 (La. App. 4 Cir. 10/25/00), 772 So. 2d 828, 830 (citing *Penalber v. Blount*, 550 So. 2d 577, 583 (La. 1989), *superseded by statute*, Acts 1996, First Extraordinary Session, No. 9, *as recognized in*, *Dempsey v. Auto. Cas. Ins.*, 95-2108, pp. 6-7 (La. App. 1 Cir. 6/28/96), 680 So. 2d 675, 679)). "[T]he trial judge cannot make credibility determinations on a motion for summary judgment."

*Indep. Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, 99-2257, p. 16 (La. 2/29/00), 755 So. 2d 226, 236.

Our review of the evidence submitted reveals ample juxtaposed testimony regarding the factual issues of whether Drs. Fos and Hansen acted intentionally, willfully, or fraudulently during their negotiations with Dr. Renne. Factual disputes create genuine issues of material fact that are suitable for the factfinder such that precludes a grant of summary judgment. Therefore, the trial court did not err by denying this portion of Defendants' Motion for Summary Judgment. We deny this portion of the writ.

### *DECREE*

For the above-mentioned reasons, we find the judgment Defendants appealed was not a final and appealable judgment. We exercise our discretionary power and convert the appeal to an application for supervisory review.

On review, we find the trial court erred by denying the Motion for Summary Judgment as it relates to the dismissal of UNO. The Board, as UNO's governing body, is the proper party. As such, we grant this portion of the writ, reverse the judgment of the trial court, and dismiss UNO.

The evidence submitted in support of and in opposition to Defendants' Motion for Summary Judgment demonstrates that genuine issues of material fact exist as to whether Drs. Fos and Hansen acted intentionally, willfully, or fraudulently. Accordingly, we find the trial court did not err by denying that portion of the summary judgment and deny this portion of the writ.

**APPEAL CONVERTED TO WRIT; WRIT GRANTED IN PART; DENIED IN PART**